# United States Court of Appeals
### For the Eighth Circuit

_____

No. 11-2719
_____

American Family Mutual Insurance Company

*Plaintiff - Appellant*

v.

Richard N. Hollander

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Dubuque

_____

Submitted: April 17, 2012
Filed: February 1, 2013

_____

Before BYE, BEAM, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

American Family Mutual Insurance Company ("American Family") appeals the district court's[1] order denying its motion for judgment as a matter of law or, in the alternative, for a new trial and awarding Richard N. Hollander $261,781.53 in

_____

[1]The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

attorney's fees pursuant to section 91A.8 of the Iowa Wage Payment Collection Law ("IWPCL").  We affirm.

I

American Family is a mutual insurance company selling a broad range of commercial and personal lines of insurance.  In 1982, Hollander began serving as a licensed insurance agent for American Family, with an office in Dubuque, Iowa.  On January 1, 1993, Hollander and American Family entered into an American Family Agent Agreement ("the Agreement"), which was to serve as the governing document for the parties' relationship.

On July 31, 2008, after serving as an insurance agent for American Family for twenty-six years, Hollander terminated his relationship with the company.  The next day, he sent a letter to some 1,200 "valued clients," informing them he had decided to end his affiliation with American Family and open his own independent insurance agency.  Hollander further informed his "valued clients" he could no longer service any policies issued by American Family and advised them to contact the company directly with any questions about their existing policies.  Hollander noted his letter was not intended to "induce or attempt to induce any current policyholder to cancel, lapse or surrender any policy in force" with American Family.

The termination took effect on August 1, 2008.  Under section 6(*l*) of the Agreement,[2] American Family was to begin making "extended earnings" payments to

---

[2]Section 6(*l*) of the Agreement provides, in relevant part:

> When this Agreement is terminated, you will be paid Extended Earnings as set out in this contract, if as a condition precedent:

-2-

Hollander. Based on a specified formula, Hollander was to receive a total of $331,955 in extended earnings payments and the sum was to be paid in equal monthly installments over a thirty-six month period.

Initially, American Family began making the extended earnings payments in the intervals specified by the Agreement. After making four such payments, however, American Family informed Hollander of its decision to discontinue "the payment of any and all extended earnings" pursuant to section 6(u) of the Agreement, which provides an agent forfeits his right to extended earnings if he does not comply with the after-termination provisions of section 6(k). Section 6(k), entitled "Your Activity After Termination," does not allow an agent "[f]or a period of one year following termination" of the Agreement to

> either personally or through any other person, agency, company or organization directly or indirectly induce, attempt to induce or assist anyone else in inducing or attempting to induce any policyholder of the Companies credited to [the agent's] account at the time of termination to lapse, cancel, replace or surrender any insurance policy in force with the Companies.

JA at 1189. Asserting Hollander was in violation of section 6(k), American Family stopped making extended earnings payments as of November 2008.

---

> 1) Within ten days of the date of termination you have put in the possession of an authorized representative of the Company all policies and policy records . . . or other property for which you are a bailee.
>
> 2) You have represented the Company under this agreement for a period of at least ten years. . . .

JA at 1189.

On November 24, 2008, American Family filed suit against Hollander, seeking compensatory damages, punitive damages, injunctive relief, and a declaratory judgment. In a five-count complaint, American Family alleged computer fraud, misappropriation of trade secrets, breach of contract, intentional interference with contractual obligations, and a request for a declaratory judgment the company had no obligation under the Agreement to pay Hollander extended earnings. American Family also filed a motion for a preliminary injunction, seeking to enjoin Hollander from engaging in activities violative of section 6(k) inasmuch as he was inducing or attempting to induce his former clients to "lapse, cancel, replace or surrender" their existing policies with American Family and purchase insurance through his new agency. Hollander resisted the preliminary injunction motion and filed a partial motion to dismiss for failure to state a claim. The district court, adopting the report and recommendations of the magistrate judge,[3] granted American Family's request for injunctive relief and denied Hollander's motion to dismiss.

On June 2, 2009, Hollander filed his answer to American Family's complaint. In his answer, Hollander included counterclaims for breach of contract, intentional interference with contractual relations, injurious falsehood, and a violation of ERISA. The case was set to proceed to trial on May 2, 2011, and the final pretrial conference was held on April 4, 2011, before the magistrate judge. On April 15, 2011, the district court held a status conference to discuss the upcoming trial. During this conference, Hollander orally advised American Family and the district court of his intention to pursue a claim for unpaid wages under the IWPCL,[4] and subsequently filed a motion to amend pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. American

[3]The Honorable Jon Stuart Scoles, United States Magistrate Judge for the Northern District of Iowa.

[4]Section 91A.8 of the Iowa Code provides "the employer shall be liable to the employee for any wages or expenses" the employer intentionally failed to pay, "plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary."

Family resisted the motion and conditionally moved to continue trial in the event the Rule 15(a) motion was granted.

The trial court denied Hollander's motion to amend, explaining:

> In considering whether leave should be granted for amendments to pleadings before trial, [Rule] 15(a)(2) provides in part that "the court should freely give leave when justice so requires." However, [Rule] 16(b)(4) [governing pretrial conferences and scheduling] provides that the scheduling order limiting time for amendment of pleadings "may be modified only for good cause." The deadline to amend pleadings was July 1, 2009, approximately twenty-one months ago, and trial in this matter is scheduled to begin on Monday, May 2, 2011. . . . [T]he primary measure for good cause is the movant's diligence in attempting to meet the scheduling order's requirements.

Order Denying Mot. to Amend, April 21, 2011, at 2-3. Finding Hollander's proposed amendment was not based on a change in the law or the emergence of new facts, the district court concluded Hollander has failed to show good cause warranting modification of the schedule. Thus, the case proceeded to trial on the original claims and counterclaims.

At the close of American Family's evidence, Hollander again moved, this time under Rule 15(b)(2) of the Federal Rules of Civil Procedure, to amend his pleadings to conform to the evidence adduced at trial and add the IWPCL claim. American Family resisted, and the court took the issue under advisement. At the close of all the evidence, the district court orally granted Hollander's Rule 15(b)(2) motion and submitted the case to the jury.[5] The jury returned a verdict in favor of Hollander, finding American Family failed to prove its breach of contract, trade secrets

---

[5]Before the case was submitted to the jury, American Family withdrew its claim for intentional interference with contractual relations, and Hollander withdrew his intentional interference with contractual relations and injurious falsehood claims.

misappropriation, and computer fraud claims. In accordance with the verdict form, which specified that a finding American Family did not prove Hollander breached the Agreement would result in a verdict for Hollander in the amount of $343,000 (the stipulated amount of Hollander's unpaid extended earnings under the Agreement), the district court entered a judgment in favor of Hollander for $343,000.

Hollander subsequently filed a motion for attorney's fees pursuant to section 91A.8 of the IWPCL. American Family resisted, arguing the jury's finding American Family failed to prove Hollander breached the Agreement was not a finding of liability for purposes of awarding wages under the IWPCL. American Family also moved for judgment as a matter of law or, in the alternative, for a new trial. In support of its motion, American Family asserted the evidence presented at trial established Hollander did in fact breach the Agreement and further asserted it was entitled to a new trial because the district court erred in instructing the jury on the meaning of the term "induce," in granting Hollander's Rule 15(b)(2) motion to amend to add the IWPCL claim, and in admitting irrelevant and prejudicial evidence.

The district court granted Hollander's motion for attorney's fees in the amount of $261,781.53 and explained:

> [American Family] having failed to prove its breach of contract claim, it is undisputed that the extended earnings were owing, and the amount thereof was undisputed. The matter of whether defendant's wage claim satisfied § 91A.3 [of the IWPCL] is a legal question for the court, and not for the jury. Defendant's extended earnings are a function of his commission sales, and they are wages within the meaning of the applicable law. . . . The court is satisfied that defendant's extended earnings claim is a claim of wages under [IWPCL] § 91A, arising out of the same conduct set out in the original pleadings, was substantively the same claim pressed by the defendant throughout the case, and was inextricably intertwined with the defense of [American Family's] contention that defendant was not entitled to extended earnings.

-6-

Order Granting Mot. for Att'y Fees & Den. Mot. for J. as a Matter of Law, July 8, 2011, at 2-3, 5. The court denied American Family's motion for judgment as a matter of law or, in the alternative, for a new trial, concluding the jury's verdict for Hollander is not against the clear weight of the evidence presented at trial. This appeal follows.

II

On appeal, American Family argues it is entitled to a new trial because the district court abused its discretion in: (1) granting Hollander's Rule 15(b)(2) motion to amend to add the IWPCL claim; (2) awarding Hollander attorney's fees; and (3) instructing the jury on contract interpretation principles and the meaning of the term "induce."

A.    Rule 15(b)(2) Motion

We first address American Family's argument the district court's grant of Hollander's Rule 15(b)(2) motion to amend to add the IWPCL claim resulted in a miscarriage of justice, warranting a new trial. "We review the district court's decision to grant or deny a motion to amend for an abuse of discretion." <u>Baker v. John Morrell & Co.</u>, 382 F.3d 816, 830 (8th Cir. 2004).

Rule 15(b)(2) provides an issue not raised in the pleadings, but tried by the parties' express or implied consent, "must be treated in all respects" as having been raised in the pleadings. Fed. R. Civ. P. 15(b)(2). "A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue." <u>Id.</u> The goal of Rule 15(b) is to promote the objective of deciding cases on the merits rather than on the relative pleading skills of counsel. <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 181-82 (1962). Thus, amendments under the rule are to be "liberally granted where necessary to bring about the furtherance of justice and

where the adverse party will not be prejudiced." Am. Fed'n of State, Cnty. & Mun. Emps. v. City of Benton, 513 F.3d 874, 883 (8th Cir. 2008) (internal quotation marks and citation omitted).

### 1.    Consent to Try the Unpleaded IWPCL Claim

American Family contends the district court abused its discretion in granting Hollander's Rule 15(b)(2) motion because American Family did not consent, expressly or impliedly, to trying the IWPCL claim. Implied consent exists where a party has "actual notice of an unpleaded issue and ha[s] been given an adequate opportunity to cure any surprise resulting from the change in the pleadings." Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997) (internal quotation marks and citation omitted). Thus, "[c]onsent may be implied when evidence relevant to an unpleaded issue has been introduced at trial without objection." Modern Leasing, Inc. of Iowa v. Falcon Mfg. of Cal. Inc., 888 F.2d 59, 63 (8th Cir. 1989) (internal quotation marks and citation omitted). Further, we have held a party will be deemed to have acquiesced in trying an unpleaded issue when the issue is "not inconsistent with" the position taken by the non-moving party earlier in the proceedings. Baker, 382 F.3d at 831; see also IES Indus. Inc. v. United States, 349 F.3d 574, 579 (8th Cir. 2003).

We first consider whether American Family had actual notice of the unpleaded IWPCL claim. In Nielson v. Armstrong Rubber Co., 570 F.2d 272 (8th Cir. 1978), we examined a district court's decision to allow a plaintiff to amend his pleadings at the close of all the evidence and add strict products liability to the already alleged negligence claim. Noting the defendant had actual notice of the unpleaded, strict products liability claim, yet failed to object to the introduction of evidence relevant to that claim at trial, we found no error in the district court's decision to allow the amendment. Id. at 275. We cited two reasons for our conclusion the defendant had actual notice of the unpleaded, strict products liability claim. First, we stated the defendant received actual notice when the plaintiff submitted a pretrial memorandum

-8-

on the first day of trial "citing the law of strict products liability." Id. Second, we explained the defendant received actual notice when the district court "announced on the third day of trial it was going to treat the pleadings as amended." Id.

Like the defendant in Nielson, American Family had actual notice of the unpleaded IWPCL claim. American Family first received notice of Hollander's intent to pursue a claim under the IWPCL at the status conference before trial when Hollander orally moved to amend the pleadings under Rule 15(a). Additionally, in his reply to American Family's resistance to his Rule 15(a) motion, Hollander expressly stated he "reasonably believes and anticipates that if the Motion to Amend under Rule 15(a) is not granted, he will be making a subsequent Rule 15(b) motion both during and after trial." JA at 334. Hollander further clarified his intent to litigate the IWPCL claim by submitting as part of his proposed jury instructions a "subject to Rule 15(b) motion" instruction on the IWPCL claim.

Yet, despite its actual notice of the unpleaded IWPCL claim, American Family failed to object when evidence relevant to the claim was introduced at trial. American Family contends it had no reason to object because evidence that may have been relevant to the IWPCL claim was also relevant to the ERISA claim, which was a part of the lawsuit. American Family further asserts it had no reason to object at trial because after the district court denied Hollander's Rule 15(a) motion to amend, American Family proceeded to trial with the understanding the IWPCL claim was not part of the case. We disagree.

To begin, we do not question American Family's argument that evidence bearing on both claims is somewhat overlapping. To prove his IWPCL claim, for example, Hollander had to show he was an "employee" within the meaning of the statute, the extended earnings qualified as "wages," and American Family intentionally failed to pay him extended earnings. See Iowa Code Ann. §§ 91A.8, 91A.2 (providing an employer is liable for intentionally failing to pay wages to an

employee, which includes a commissioned salesperson, and stating "'[w]ages' means compensation owed by an employer for . . . any payments to the employee . . . which are due an employee under an agreement with the employer"). Hollander also had to show he was an "employee" for purposes of the ERISA claim. See 29 U.S.C. § 1002(6) (defining an "employee" as "any individual employed by an employer"); see also Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992) (adopting a "common-law test for determining who qualifies as an 'employee' under ERISA"). On the other hand, to succeed on his ERISA claim, Hollander had to prove the extended earnings qualified as an "employee pension benefit plan," *not* "wages." See JA at 254 (Hollander's Answer and Counterclaims); 29 U.S.C. § 1002(2)(A) (defining "employee pension benefit plan" to include a "plan, fund or program . . . established or maintained by an employer . . . to the extent that . . . such plan, fund, or program . . . results in a deferral of income by employees for periods extended to the termination of covered employments or beyond").

This overlap, however, does not excuse American Family from objecting to evidence relevant to the unpleaded IWPCL. See IES Indus., 349 F.3d at 579 (rejecting the argument "Rule 15(b)'s consent requirement is not met where evidence that is relevant to an issue purportedly tried by consent is also relevant to an issue already in the case" because the argument is "an overstatement, if not a misstatement of the law"). As we stated in IES Industries, "[i]t is axiomatic that evidence bearing on both claims and the defenses to those claims may well overlap in a given case," but this "inevitability does not foreclose amendment under Rule 15(b)." Id. Rather, the dispositive inquiry is whether the non-moving party had actual notice of the unpleaded claim and "an adequate opportunity to cure any surprise resulting from the change of the pleadings." Kim, 123 F.3d at 1063 (internal quotation marks and citation omitted). Here, American Family knew of Hollander's intent to litigate the unpleaded IWPCL claim and had the opportunity at trial to cure any surprise by objecting to evidence relevant to the claim, such as evidence characterizing Hollander as an "employee" or describing the extended earnings as "deferred commissions." It did not. Having failed

to object, American Family impliedly consented to trying the unpleaded IWPCL claim and is in no position now to contest the amendment.

We are also unpersuaded by American Family's argument its failure to object at trial does not amount to implied consent because the district court's denial of Hollander's Rule 15(a) motion to amend led American Family to believe the IWPCL claim was not part of the case. Rule 15(b)(2) directs that an issue tried with the express or implied consent of the parties is to be treated in all respects as if raised in the pleadings. Fed. R. Civ. P. 15(b)(2). Thus, a district court's refusal to permit an amendment before trial does not prevent the court from allowing the amendment if the issue was subsequently tried by the parties' consent. Cf. U.S. Fid. & Guar. Co. v. U.S. for Use & Benefit of Contractor's Elec. Supply, Inc., 389 F.2d 697, 698-99 (10th Cir. 1968) (concluding that when defendant's motion to amend was denied before trial, but direct evidence on the sought amendment was admitted at trial without any objection, the issue was tried with the implied consent of the parties). Moreover, the district court did not deny Hollander's pretrial motion to amend under the liberal standard of Rule 15(a). Rather, the court denied the amendment based on the "good cause" standard of Rule 16(b)—the standard governing a party's request to amend the pleadings after the scheduling deadline for doing so. See Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716 (8th Cir. 2008). The court's conclusion Hollander failed to show "good cause" for the twenty-one month delay in seeking to amend the pleadings to add the IWPCL claim is not to say the pleadings could not be amended to conform them to the evidence presented at trial. See Fed. R. Civ. P. 15(b)(2) ("A party may move at any time—even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.").[6]

---

[6]This court's opinion in Gray v. Bucknell, 86 F.3d 1472 (8th Cir. 1996), is not controlling here because it is inapposite both factually and procedurally. See id. at 1481-82 (finding "the district court's denial of [the plaintiff's] motion to file a fourth amended complaint clearly placed the prima facie tort claim outside the proper considerations at trial"). Factually, American Family received actual notice that

Therefore, we conclude that even if American Family did not expressly consent to trying the unpleaded IWPCL claim by contending throughout the litigation it did not owe Hollander extended earnings, it certainly impliedly consented to trying the claim when it failed to object to evidence relevant to the unpleaded claim despite having actual notice of it.

Additionally, as we explained in <u>Baker</u>, a Rule 15(b)(2) amendment should be allowed "if the amendment seeks to raise an issue not inconsistent with the position taken by the non-moving party earlier in the proceedings." 382 F.3d at 831. The only dispute between the parties was whether Hollander was entitled to extended earnings payments.[7] The position taken by American Family from the beginning of the case was that Hollander forfeited his right to receive extended earnings because he breached the Agreement's "no-inducement" clause. In other words, American Family's position from the start was it did not owe Hollander extended earnings. Hollander consequently sought to amend the pleadings to add a claim under the IWPCL to recover the extended earnings, which American Family failed to pay him on the ground he breached the "no-inducement" clause of the Agreement. The amendment, therefore, sought to raise an issue not inconsistent with the position taken

---

Hollander intended to try the IWPCL claim by Hollander's actions in addition to filing the Rule 15(a) motion. And procedurally, the <u>Gray</u> court held that the district court did not abuse its discretion in denying a Rule 15(b) motion. Here, although the district court granted a Rule 15(b) motion under somewhat similar circumstances, it did not abuse its discretion. <u>See</u> <u>Rice v. Nova Biomedical Corp.</u>, 38 F.3d 909, 918 (7th Cir. 1994) ("When an issue is governed by a deferential standard of review, such as abuse of discretion, the implication is that two district judges who reached the opposite result in identical cases might both be affirmed.").

[7]At trial, counsel for American Family asked Hollander: "The question in this case and the dispute is about whether or not you should be paid your extended earnings. That's your counterclaim, isn't it?" Trial Tr., vol. 2, at 74. Hollander responded: "I believe it is, yes." <u>Id.</u>

by American Family earlier in the proceedings and in light of our holding in <u>Baker</u>, the district court's decision to allow it was not an abuse of discretion.

    2.    Prejudice

American Family also contends the amendment should not have been allowed because "the post-eleventh hour addition of the IWPCL" claim deprived American Family of an opportunity to defend against and present evidence relevant to the IWPCL claim, thereby causing prejudice. Appellant's Br. at 20. We recognize an implied amendment should not be allowed if it will result in substantial prejudice to the non-moving party. <u>Am. Fed'n</u>, 513 F.3d at 883; <u>see also</u> <u>Matter of Baeubouef</u>, 966 F.2d 174, 178 (5th Cir. 1992) (holding "[a]n implied amendment of the pleadings will not be permitted where it results in substantial prejudice to a party") (internal quotation marks and citation omitted); <u>Cioffe v. Morris</u>, 676 F.2d 539, 542 (11th Cir. 1982) (stating implied consent for purposes of Rule 15(b) will not be found if the non-moving party will be prejudiced). We fail to see, however, how American Family was prejudiced by the addition of the IWPCL claim.

To determine if a party has been prejudiced by an amendment, we consider whether the party had "a fair opportunity to defend" and whether it "could offer any additional evidence if the case were to be retried." <u>Nielson</u>, 570 F.2d at 276 (internal quotation marks and citation omitted). Here, American Family certainly had a fair opportunity to defend against the unpleaded claim. As we explained above, American Family knew of Hollander's intent to pursue the IWPCL claim at trial. It was thus free to object to the introduction of any evidence relevant to the claim or offer any evidence in defense against it. Additionally, after Hollander orally moved to amend the pleadings to add the IWPCL claim at the close of American Family's evidence, the court took the issue under advisement, and American Family subsequently submitted a nineteen-page brief in opposition of the motion to amend. We therefore reject

American Family's argument the amendment deprived it of an opportunity to defend against the IWPCL claim.

We also fail to see what additional evidence American Family could have offered if the case were to be retried. American Family asserts it could have presented evidence "on the development of the extended earnings program, why it was used, all of the factors that go into its calculation, why it is not a wage, the timing of when it was paid and other additional evidence." Appellant's Br. at 23. The record shows, however, that American Family did present such evidence at trial. In addition to Hollander's extensive testimony on the extended earnings program, American Family offered the testimony of Steve Goldermann, the company's sales manager, and Keith Ryniak, American Family's sales director. Each testified as to the purpose and use of the program, and Ryniak spoke on how extended earnings are calculated.

Moreover, to the extent American Family argues it could have offered evidence as to why the extended earnings are not "wages" or why Hollander is not an "employee" for purposes of the IWPCL, we note the question of whether Hollander's wage claim satisfied the applicable sections of the IWPCL is a question of law for the court to decide. See Kaufmann v. Siemens Med. Solutions USA, Inc., 638 F.3d 840, 846 (8th Cir. 2011). Here, the district court decided Hollander qualified as an "employee" and further determined the extended earnings qualified as "wages." American Family does not challenge the court's legal conclusions on appeal and we see no error in them. See Jeanes v. Allied Life Ins. Co., 300 F.3d 938, 944 (8th Cir. 2002) (stating a commissioned salesperson is an employee for purposes of the IWPCL); Kaufmann, 638 F.3d at 844 (concluding the term "wages" under the IWPCL includes commissions and bonuses for labor or services rendered by an employee); see also Iowa Code § 91A.2 (defining the terms "employee" and "wages").

In sum, we conclude the district court did not abuse its discretion in granting Hollander's Rule 15(b)(2) motion to amend the pleadings to add the IWPCL claim

because the claim was tried with American Family's implied consent and the amendment did not result in prejudice to American Family.

      B.     Attorney's Fees

American Family next asserts the district court erred in awarding attorney's fees to Hollander under the IWPCL and alternatively argues the amount of the award should be reduced. "The decision to award or deny attorney fees and the amount of any award rests within the sound discretion of the district court and we will not disturb the district court's decision absent a clear abuse of that discretion." Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc., 682 F.3d 1091, 1094 (8th Cir. 2012) (internal quotation marks and citation omitted). After carefully reviewing the record, we find no abuse of discretion in this case.

Section 91A.8 of the Iowa Code provides "an employer that has intentionally failed to pay an employee wages . . . shall be liable to the employee for any wages . . . that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any *attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary*." (Emphasis added.) "The purpose of the statute is to reimburse the employee for the expenses incurred in suing for back wages." Gabelmann v. NFO, Inc., 606 N.W.2d 339, 342 (Iowa 2000). Thus, if an employee prevails on a wage claim under the IWPCL, the district court is required to assess attorney's fees against the employer. Id.; see also Audus v. Sabre Commc'ns Corp., 554 N.W.2d 868, 874 (Iowa 1996) ("The trial court must assess attorney fees when an employee prevails in a suit brought under chapter 91A [of the IWPCL] and requests such attorney fees."). The award of attorney's fees under the IWPCL is mandatory, "irrespective of whether the employer's conduct was intentional." Gabelmann, 606 N.W.2d at 343.

-15-

American Family does not dispute the mandate for attorney's fees under section 91A.8 of the IWPCL. Rather, it argues the jury did not find American Family liable for purposes of the IWPCL because the jury's finding "American Family failed to prove a breach of contract did not constitute an affirmative award of wages under the IWPCL." Appellant's Br. at 35-36. We disagree.

The jury found Hollander did not breach the Agreement, entitling him to receive $343,000 in extended earnings from American Family. Once the jury made that finding, the question of whether the extended earnings qualified as "wages" was a legal one for the court, and not the jury, to decide. See Kaufmann, 638 F.3d at 844. Defining the extended earnings as a function of Hollander's commission sales, the district court concluded the extended earnings are "wages" within the meaning of the IWPCL. See Iowa Code § 91A.2(7) (defining "wages"). The jury's finding Hollander was entitled to extended earnings, coupled with the district court's legal conclusion the extended earnings qualify as "wages," is therefore sufficient to establish liability for purposes of assessing attorney's fees under the IWPCL. See Maday v. Elview-Stewart Sys. Co., 324 N.W.2d 467, 470 (Iowa 1982) (stating a trial court may not assess attorney's fees under Iowa Code section 91A.8 "until liability has been established"). Accordingly, the district court did not abuse its discretion in awarding Hollander attorney's fees under the IWPCL. See id. (stating a trial court must award attorney's fees to an employee who has prevailed on an IWPCL claim).

American Family alternatively argues that even if the award of attorney's fees was proper, the amount awarded was an abuse of the court's discretion. Specifically, American Family asserts the court abused its discretion by awarding Hollander attorney's fees covering the entire period of the litigation, as opposed to limiting the fees to expenses incurred after the court granted Hollander's Rule 15(b)(2) motion to amend the pleadings to add the IWPCL claim. Section 91A.8, however, allows a prevailing employee to recover *any* "attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary." Iowa Code § 91A.8. The

-16-

district court found Hollander's expenses for recovering the unpaid wages began the moment American Family decided to discontinue the extended earnings payments and file a lawsuit against him. In other words, the court determined all fees incurred from the inception of the lawsuit to be fees "usual and necessary" to the recovery of the unpaid wages, *i.e.*, the unpaid extended earnings. Given the district court's broad discretion in determining the amount of attorney's fees, we cannot say the court's decision to award Hollander fees for the entire period of the litigation was an abuse of that discretion. And because American Family stipulated the hourly rates and overall amount of time claimed by Hollander were fair and reasonable, we affirm the district court's award of $261,781.53 in attorney's fees.

The dissent believes ERISA preemption renders the district court's consideration of Hollander's claims for attorney's fees under the IWPCL erroneous for lack of subject matter jurisdiction. It bases its position on precedent recognizing complete preemption in the context of certain ERISA cases. The dissent fails to note, however, the salient distinction between complete and ordinary preemption in the relevant line of cases: complete preemption has attached to ERISA claims only in the removal context, where an ERISA claim provides the sole basis of federal subject matter jurisdiction. See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63–64 (1987); Schoedinger v. United Healthcare of the Midwest, Inc., 557 F.3d 872, 874–76 (8th Cir. 2009). In contrast, "[w]here preemption involves a choice of law, rather than a choice of forum, it is an affirmative defense." Piekarski v. Home Owners Sav. Bank, F.S.B., 956 F.2d 1484, 1489 (8th Cir. 1992).

In Pilot Life Ins. Co. v. Dedeaux, the Supreme Court concluded that because ERISA's preemption clause was modeled after the preemption clause in the Labor Management Relations Act (LMRA), the scope of ERISA preemption should be analyzed in light of LMRA precedent. 481 U.S. 41, 44–46 (1987). Based on that directive, a number of our sister circuits have concluded that where ERISA preemption would determine merely the choice of substantive law, rather than forum,

ERISA preemption is a waivable defense. See, e.g., Saks v. Franklin Covey Co., 316 F.3d 337, 349–50 (2nd Cir. 2003); Wolf v. Reliance Standard Life Ins. Co., 71 F.3d 444, 446–47 (1st Cir. 1995); Hanson v. Prudential Ins. Co. of Am., 892 F.2d 1046, at *1–3 (9th Cir. 1990) (unpublished decision); Dueringer v. Gen. Am. Life Ins. Co., 842 F.2d 127, 129–30 (5th Cir. 1988).

In our own LMRA precedent, we have also drawn a distinction between ordinary preemption, in which the resolution of a state-law claim requires interpretation of a collective bargaining agreement, and complete preemption, in which the LMRA is used to remove a state-law claim to federal court. See Trustees of Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc., 450 F.3d 324, 329 n. 3 (8th Cir. 2006) ("The Union thus asserts [LMRA] preemption as a defense, raising the question of whether Superior's [state-law] claim can be litigated in this action. This form of preemption is distinct from the jurisdictional doctrine of complete preemption used to remove state claims to federal court."); Gaming Corp. of America v. Dorsey & Whitney, 88 F.3d 536, 543 (8th Cir. 1996) ("Complete preemption provides an exception to the well-pleaded complaint rule and is different from preemption used only as a defense."). Accordingly, ERISA preemption may also be categorized as complete or ordinary—and, therefore, jurisdictional or waivable—depending upon the circumstances of a particular case.[8] Because

---

[8]Here, the parties' diversity provided an independent basis for subject-matter jurisdiction, relegating ERISA preemption to a waivable defense. Benefits-due actions under ERISA have concurrent state and federal jurisdiction. 29 U.S.C. § 1132(e)(1). Therefore, other circuits have held that preemption questions in benefits-due cases constitute questions of choice of law—not of forum—and thus are waivable defenses. See, e.g., Saks, 316 F.3d at 349; Wolf, 71 F.3d at 448-49. In other actions where ERISA provides exclusive federal jurisdiction, the effect of the preemption question is different. See, e.g., Saks, 316 F.3d at 350; Wolf, 71 F.3d at 449 n.8. Because this case presents a benefits-due action—with an independent jurisdictional basis of diversity—preemption is a waivable affirmative defense.

American Family failed to raise ERISA preemption before the district court,[9] we may not consider the issue sua sponte on appeal.  See Roberts v. Apfel, 222 F.3d 466, 470 (8th Cir. 2000).

C.    Jury Instructions

American Family also argues it is entitled to a new trial based on the district court's erroneous jury instructions.  Specifically, American Family challenges Instruction No. 13A ("Contract Terms—Interpretation") and Instruction No. 14 ("Induce—Defined").  Paragraph 6 of Instruction No. 13A instructed the jury on a rule of contract interpretation known as *contra preferentem.*  It provided:  "Ambiguous language in a written contract is interpreted against the party who selected it."  JA at 534.  Instruction No. 14 defined the meaning of the term "induce" as "to persuade or urge."  Id. at 535.  American Family asserts giving these two instructions together, *i.e.*, giving an "overly narrow" definition of the term "induce," the only possibly ambiguous term in the Agreement, while simultaneously instructing the jury to interpret any ambiguity in the Agreement against American Family, made its burden of proving a breach "a virtual non-possibility."  Appellant's Br. at 48.

_____

[9]We disagree with the dissent's assertion that by arguing Hollander's IWPCL claims were "almost the same as but slightly different from his existing ERISA remedies," American Family somehow raised the substance of a preemption issue before the district court.  Moreover, if American Family had intended to raise a preemption defense in the district court, we expect the argument would have blossomed into an intelligible and articulate argument at least by the time the case reached our court.  Yet there is nothing in American Family's original or reply brief, or anything American Family's counsel said during oral argument, which could possibly be construed as a claim that we should reverse because the IWPCL claim is preempted by ERISA.  Thus, even if we assumed for argument's sake that this nonjurisdictional defense had been raised in the district court, American Family waived the argument on appeal.  See Lockley v. Deere & Co., 933 F.2d 1378, 1386–87 (8th Cir. 1991) (noting an argument is abandoned and, therefore, unreviewable if not raised on appeal).

-19-

We review for an abuse of discretion a district court's jury instructions. Der v. Connolly, 666 F.3d 1120, 1126 (8th Cir. 2012). "Our review is limited to determining whether the instructions, when taken as a whole and in light of the particular issues presented, fairly and adequately presented the evidence and the applicable law to a jury." Lighting & Power Servs., Inc. v. Roberts, 354 F.3d 817, 819 (8th Cir. 2004). "Where a party contends that an instruction was improperly given to the jury, reversal is appropriate only where the erroneously given instruction affects substantial rights." Harrell v. Madison Cnty. Miss. Mote Co., Inc., 370 F.3d 760, 762 (8th Cir. 2004); see also Fed. R. Civ. P. 61.

Under Wisconsin law, the law governing the parties' Agreement, contract ambiguity is a question of law for the trial court to decide. Kremers-Urban Co. v. Am. Emp'rs Ins. Co., 351 N.W.2d 156, 163 (Wis. 1984). A contract term is ambiguous if it is fairly susceptible of more than one reasonable interpretation. Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptize & Co., 557 N.W.2d 67, 75 (Wis. 1996). If the trial court finds a contract ambiguous, the court can properly submit the question to the jury and instruct the jury on principles of contract interpretation. See U.S. Fire Ins. Co. v. Pressed Steel Tank Co., Inc., 852 F.2d 313, 316 (7th Cir. 1988) (applying Wisconsin law). If no ambiguity exists, however, the court is to construe the contract as a matter of law and the jury is not to be given the task of interpreting it. See id.; see also D'Angelo v. Cornell Paperboard Prods. Co., 207 N.W.2d 846, 848 (Wis. 1973) (stating the rule of interpreting a contract against its drafter is inapplicable where the contract is unambiguous).

The district court made no explicit finding as to whether the Agreement as a whole or any of its terms were ambiguous. The court's decision to define the term "induce" for the jury, however, seems to imply the court found no ambiguity in the meaning of the only arguably disputed term in the Agreement. In the absence of any findings of ambiguity, the district court erred in instructing the jury to interpret any

ambiguous language in the Agreement against the drafter, which in this case was American Family.

The court's error, however, is harmless when viewed in light of the charge as a whole. See Roberts, 354 F.3d at 819-20 (stating an instructional error is not a ground for reversal unless it affects the substantial rights of the party challenging the instruction); see also Fed. R. Civ. P. 61 (providing an error may be disregarded unless it affects a party's substantial rights). The court instructed the jury on principles of contract interpretation in Instruction No. 13A. The court then told the jury, in Instruction No. 14, "[t]he term 'induce' means to persuade or urge." JA at 535. We find the sequence of the instructions telling. Thus, while we agree with American Family the district court erred by giving the *contra preferentem* instruction, we disagree giving the two instructions together made American Family's burden of proving its case a "virtual non-possibility." Instead, we believe that by defining the term "induce," Instruction No. 14 effectively told the jury that irrespective of the court's previous charge on principles of contract interpretation, the jury was to apply the definition of "induce" provided by the court and was not free to apply its own meaning to or alter the interpretation of the term. We therefore conclude any error in giving Instruction No. 13A was harmless in light of the subsequently given Instruction No. 14.

We further conclude the court's definition of the term "induce" is not "overly narrow" and does not warrant reversal. The district court defined "induce" to mean "to persuade or urge." Id. (citing Webster's Dictionary as the authority for the jury instruction). Noting Wisconsin law requires undefined terms in a contract be given their ordinary meaning, see Meyer v. U.S. Fire Ins. Co., 582 N.W.2d 40, 41 (Wis. Ct. App. 1998), American Family asserts the court's definition of "induce" is contrary to the ordinarily understood meaning of the term, which includes "to bring something about." Appellant's Br. at 47. Yet, each alternative dictionary definition urged for by American Family includes "to persuade" or "to move by persuasion" as part of the

meaning of the term "induce," see id. at 46-47, and at trial, American Family's own witness defined the term to mean "to persuade or convince or cause somebody to do something," Trial Tr., vol. II, at 112. "We do not lightly overturn a district court's choice of words in charging the jury," Kan. City Power & Light Co. v. Ford Motor Credit Co., 995 F.2d 1422, 1429 (8th Cir. 1993), and we decline to do so in a case where the definition provided by the court not only comports with the plain and ordinary meaning of the term, but is essentially the same as the definition provided by the party now challenging it.

## III

For the reasons stated above, the judgment of the district court is affirmed.

BEAM, Circuit Judge, concurring and dissenting.

I concur in the majority's affirmance of the district court's judgment of May 9, 2011, awarding Hollander $343,000 based upon a stipulated amount of unpaid "extended earnings" arising under the American Family Agent Agreement dated January 1, 1993 (1993 Agreement).[10] The parties agreed that this amount was due Hollander if he did not breach the Agreement and both the trial court and an advisory jury determined that he did not.[11] I dissent from the majority's affirmance of the

---

[10]The amount was established through calculations made by Hollander's listed expert witness Stephen E. Koons, CPA/ABV, and was thereafter agreed upon by the parties. In any event, no part of this award was for attorney fees.

[11]While Hollander ultimately sought judgment under three theories–breach of contract, Chapter 91A (Iowa Wage Payment Collection Law (IWPCL)), and ERISA–he conceded in his trial brief to the court that the amount due him was for "extended earnings" under the 1993 Agreement and was the correct amount due under each of his theories. While the only cause of action in this case for which the trial court had subject matter jurisdiction was his ERISA claim, he voluntarily dismissed

district court's orders of July 8, 2011, and August 3, 2011, awarding Hollander $261,783 and $34,056.25 in contested attorney fees pursuant to section 91A.8 of the IWPCL, a state law claim clearly preempted by the federal ERISA plan set forth in the 1993 Agreement. An ERISA benefits due claim under this plan was in full force and effect at all times relevant to these orders.

## I.    BACKGROUND

### A.    The ERISA Claim

By way of a complaint filed in federal district court, American Family Mutual Insurance Company (American) asserted a breach of contract claim (and some other abandoned or voluntarily dismissed claims no longer relevant here) against Hollander based upon the 1993 Agreement. On June 2, 2009, Hollander answered American's complaint and included a counter complaint in which he asserted several state and federal law causes of action purportedly arising under the agreement. But, the Hollander counter pleading that is material to this dissent arises exclusively under federal law and appears as Count IV. In Count IV, Hollander set forth an ERISA claim. In this context he averred that the "extended earnings" plan found in the 1993 Agreement is a "qualified employee pension benefit plan" under ERISA, 29 U.S.C. § 1002(2)(A). Hollander also alleged in his ERISA counterclaim that he "is entitled to damages, including reasonable attorney fees and costs, arising from [American's] wrongful termination of his pension benefits under the 1993 Agreement." Hollander embellished these allegations through his trial brief, wherein he argued extensively that for purposes of his 29 U.S.C. § 1132(a)(1)(B) ERISA benefits due claim he met all the requirements necessary to support such a cause of action. He specifically cited

---

that remedy prior to this appeal. Thus, I conclude that the privately negotiated stipulated amount was a separately enforceable settlement agreement. Accordingly, I leave the parties where they find themselves on that award.

as applicable to his claim Harris v. Arkansas Book Co., 794 F.2d 358, 360 (8th Cir. 1986) (adopting the Donovan v. Dellingham, 688 F.2d 1367 (11th Cir. 1982) test for determining whether a plan is an ERISA-qualified plan) and Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 323-24 (1992) (adopting the common law definition of "employee" for purposes of ERISA cases) and set forth a litany of factors from the 1993 Agreement as validation of this ERISA claim. This claim remained in dispute in this litigation until July 27, 2011, when it was voluntarily dismissed by Hollander. Indeed, as late as July 19, 2011, the district court entered an order directing the parties "to submit their positions as to the proposed procedure for resolution of defendant's pending ERISA claim." The district court's IWPCL judgments awarding the disputed attorney fees were, as earlier noted, filed on July 8, 2011, and August 3, 2011.

## B.    The IWPCL Claim

An IWPCL claim did not enter the picture until some twenty-one months after the expiration of the pleading deadline imposed by the trial court. It came via Hollander's belated motion to amend the pleadings pursuant to Federal Rule of Civil Procedure 15(a). His Rule 15(a) motion sought leave to plead an IWPCL claim based upon the 1993 Agreement, specifically alleging that "[t]he facts and documents upon which [Hollander's] proposed [Rule 15(a)] amendment is based are the same facts and documents upon which Count IV of [Hollander's] counterclaims, under [ERISA] are based." The ERISA claim, as above indicated, remained actively pending in the case until Hollander dismissed it by stipulation on July 27, 2011.

As the panel majority correctly explains, such a time-delinquent motion is granted only "when justice so requires," Rule 15(a)(2), and such requirement must be based upon "good cause" resulting from *changes in the law* or the emergence of new facts, ante at 5. Here, there was no good cause shown for the delay in making the claim. Neither was there evidence of the emergence of new facts or relevant changes

-24-

in the law. Indeed, in this case, not only were there no "changes in the law," but the attempted assertion of a new state law claim within the contours of the pending ERISA claim, as I will shortly explain in more detail, violated complete preemption precedent established by the Supreme Court twenty-five years ago in <u>Metropolitan Life Insurance Co. v. Taylor</u>, 481 U.S. 58, 62-63 (1987), and by additional precedent regarding subject matter jurisdiction in the face of complete preemption established by this circuit in 1996, <u>Gaming Corp. of America v. Dorsey & Whitney</u>, 88 F.3d 536 (8th Cir. 1996). American contended at every opportunity that such amendments, coming within seventeen days of the commencement of trial, were grossly prejudicial, especially since it had little, if any, chance to prepare to meet the elements of the new claim. Hollander's Rule 15(a) motion was correctly denied, not just because it violated Rule 16(b)(4) (governing pretrial conferences and scheduling), but also because it violated the very essence of Rule 15's fair trial policies and longstanding federal court jurisprudence concerning subject matter jurisdiction in the face of complete preemption.

## C.     The Trial

The trial commenced, evidence was presented and American rested. At this point, Hollander again orally advanced the same IWPCL claim, this time through a Rule 15(b)(2) motion. He sought to insert the IWPCL claim, purportedly to conform the pleadings to the trial evidence that had been adduced. The district court granted this new motion. This was both an abuse of discretion and a violation of well established federal precedent.

In support of this motion, Hollander's lawyer stated as follows:

Mr. Hollander, at this time moves for leave to amend his pleading under Rule 15(b) to add to conform to the proof [of] his theory under Chapter 91A of the Code of Iowa, Wage Payment Collection Law. . . .

-25-

The ERISA claim has been in the case from the outset . . . and effectively the primary difference between the ERISA claim and the [IWPCL] claim . . . is that we're dealing with the subject of deferred commissions and the possibility that if the nonpayment has been *willful*, it will entitle Mr. Hollander to be subject to receive liquidated damages for unpaid amounts.

J.A. at 1079 (emphasis added). In essence, Hollander, after conceding that the ERISA and IWPCL claims were essentially identical except that he could not claim extended damages or an enhanced attorney fee for "willful" conduct under ERISA, requested (and was granted) a Rule 15(b) amendment adding the IWPCL claim based upon the "facts and documents" supporting his Count IV ERISA claim but importing the extended damages and fee remedies found only in the IWPCL. American, in written opposition to the oral 15(b) motion, continued to argue the substance of an ERISA preemption violation given the insertion of the newly minted IWPCL claim. American argued the IWPCL claim was, as Hollander contended, almost the same as but slightly different from his existing ERISA remedies, specifically in matters of attorney fees and liquidated damages as governed by IWPCL. American also raises these same arguments in this appeal. While it could have been more precise in its arguments, American more than "adequately raised the substance of the [preemption] issue . . . even though [it] did not use the word [preemption]" in its arguments to the district court and to this court. United States v. Pietrantonio, 637 F.3d 865, 869 n.1 (8th Cir. 2011). The majority concedes that the district court tried this case as an IWPCL claim to the exclusion of the ERISA claim asserted in the original pleadings. Indeed, the majority approvingly quotes the district court as follows:

The [district] court is satisfied that defendant's [Hollander's] extended earnings claim is a claim of wages under [IWPCL] § 91A, arising out of the same conduct set out in the original pleadings, was substantively the same claim pressed by [Hollander] throughout the case, and was inextricably intertwined with the defense of [American Family's] contention that defendant was not entitled to extended earnings.

-26-

Ante at 6 (third and fifth alterations in original).

## II.    DISCUSSION

It is beyond dispute that ERISA presents complete preemption pursuant to the broad and expansive sweep of 29 U.S.C. § 1144(a). Metro. Life, 481 U.S. at 66. And, at least in this circuit, complete preemption is a jurisdictional doctrine that applies where the federal preemptive power is complete. Gaming Corp., 88 F.3d at 542; Firstcom, Inc. v. Qwest Corp., 555 F.3d 669, 677 n.6 (8th Cir. 2009). Accordingly, the proposition that a state law claim is preempted by § 1144(a) is an issue of subject matter jurisdiction that may be raised at any time, including sua sponte by the court. Auto-Owners Ins. Co. v. Tribal Ct. of the Spirit Lake Indian Reservation, 495 F.3d 1017, 1020 (8th Cir. 2007); Lundeen v. Canadian Pac. Ry. Co., 447 F.3d 606, 611 (8th Cir. 2006), reversed on other grounds by, Lundeen v. Canadian Pac. Ry. Co., 532 F.3d 682 (8th Cir. 2008).

The majority, notwithstanding the almost completely duplicating features of the IWPCL claim when compared with the ERISA claim, rejects ERISA preemption of the IWPCL claim and in doing so erroneously argues that the "scope of ERISA preemption should be analyzed in light of LMRA [the Labor Management Relations Act] precedent." Ante at 17. After purportedly viewing the conclusions of "sister circuits," the majority concludes that in the face of the IWPCL state law claim, the ERISA preemption was waivable, citing cases, and presumably, that ERISA preemption was waived by American. The majority's theory is best described, and perhaps best refuted, by Wolf v. Reliance Standard Life Insurance Co., 71 F.3d 444

(1st Cir. 1995),[12] cited by the majority as the principal support for its "waivability" contention.

The Wolf court conceded the argument "that because there is a 'compelling policy' in favor of application of federal ERISA law to [a duplicative or similar state law] claim, ERISA preemption is jurisdictional and therefore nonwaivable." Id. at 447. In doing so, it correctly notes that

> [t]he foundation of the argument is ERISA's broad preemption provision: ERISA [with a few inapplicable exceptions] "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). One of Congress's intentions in enacting ERISA, as divined through legislative history, was to encourage the growth of private employee benefit plans by replacing diverse state laws with a nationally uniform federal common law regulating employee benefit plans. Treating ERISA preemption as non-jurisdictional and therefore waivable would, so the argument goes, frustrate that intent, subjecting employee benefit plans to regulation and litigation under fifty non-uniform bodies of state law. The costs of adapting to and litigating under non-uniform state law and the potential for liability and damages beyond that permitted under ERISA would deter employers from enacting benefits plans. Thus, courts should hold that ERISA preemption is jurisdictional and not waivable, consistent with the congressional intent to create and apply a uniform federal law regulating employee benefit plans.

Id. (second alteration in original) (footnote omitted). Wolf recognized that the above argument is substantially based upon the Supreme Court's "at length" analysis of the

---

[12]The First Circuit appears to have abandoned Wolf's approach as evidenced by Negron-Fuentes v. UPS Supply Chain Solutions, 532 F.3d 1 (1st Cir. 2008). In Negron-Fuentes, that Circuit soundly and completely rejected a plaintiff's effort, through "artful pleading" to escape ERISA preemptive force by "disguis[ing]" a federal ERISA claim as a state law cause of action. Id. at 6.

legislative history behind ERISA's preemption provision in <u>Pilot Life Insurance Co. v. Dedeaux</u>, 481 U.S. 41, 44-46, 52-57 (1987), a case filed in federal district court under 28 U.S.C. § 1332's diversity jurisdiction.

<u>Wolf</u> further conceded that

> [t]he <u>Pilot Life</u> decision explains that ERISA's preemption clause and civil enforcement scheme entirely displaced state law causes of action for benefits claims under ERISA plans. If state law is "displaced," then arguably there is no subject matter jurisdiction over a state law cause of action for benefits due. Lack of subject matter jurisdiction is, of course, a nonwaivable defense and may be raised at any time. <u>Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee</u>, 456 U.S. 694, 702 (1982).

71 F.3d at 447 (some citations omitted). <u>Wolf</u> then went astray. It imported into its analysis of <u>Pilot Life</u>'s ERISA preemption decision a waivability theory based upon misuse of separate and distinct labor law jurisprudence unrelated to <u>Pilot Life</u> issues and totally unmentioned in <u>Pilot Life</u>. The Supreme Court in <u>Pilot Life</u> simply used its earlier description of "the powerful preemptive force of § 301 of the LMRA," which "displace[s] all state actions for violation of contracts between an employer and labor organization," 481 U.S. at 55, as an analogue to compare the § 301 preemption with its <u>Pilot Life</u> characterization of the equally powerful ERISA preemption. Nothing more.

<u>Wolf</u>'s improvident mixing of unrelated NLRB forum designation issues with <u>Pilot Life</u>'s ERISA choice-of-law concerns, prompts mention of Justice Ginsburg's recent observation for a unanimous Supreme Court rejecting a similarly disjointed government argument. The Justice said:

> In this regard we recall Chief Justice Marshall's sage observation that "general expressions, in every opinion, are to be taken in connection with

-29-

the case in which those expressions are used.  If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision."

Ark. Game and Fish Comm'n v. United States, 133 S. Ct. 511, 520 (2012) (quoting Cohens v. Virginia, 19 U.S. 264, 399 (1821)).  Unfortunately for Wolf, and the majority, the Supreme Court in Pilot Life spoke not a single word of *forum* designation or *forum* selection in the context of complete ERISA preemption.  Indeed, in its citation of the ERISA Conference Report's reference to the LMRA, Pilot Life simply quoted the report as follows: "*All such [ERISA] actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those [actions] brought under section 301 of the Labor-Management Relations Act of 1947.*"   481 U.S. at 55.  How this single reference turns into waivability of subject matter jurisdiction in the ERISA context is not well explained in Wolf or by the majority.

But of even greater importance, since Pilot Life and Wolf, the Supreme Court has again unequivocally described the focus, breadth, depth and extraordinary preemptive power of ERISA as clearly dictated by congressional intent and policy.

In Aetna Health Inc. v. Davila, 542 U.S. 200 (2004), a case removed from a Texas state forum to federal district court pursuant to 28 U.S.C. § 1441(a), Justice Thomas, speaking for a unanimous court, forcefully lays waste to the majority's ERISA waiver contentions.  In Davila, the Supreme Court noted that the Court of Appeals correctly recognized that state causes of action that duplicate or fall within the scope of an ERISA § 502(a) remedy are completely preempted and totally and peremptorily removable from state to federal court, but that the circuit otherwise failed to recognize the power of the ERISA preemption. Id. at 214-16. Rejecting "form over substance" relabeling of state claims to evade the preemptive scope of ERISA, the Supreme Court again explained the nature of the ERISA preemption and that it

-30-

provides a remedy for a federal cause of action that is in no way attenuated by the selection or designation of a particular forum. Id. at 214 (quotation omitted).

Justice Thomas again explained that

Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, see ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern." Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981).

. . .

As the Court said in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987):

"[T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. 'The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" Id. at 54 (quoting Russell, supra, at 146.)

Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.

The pre-emptive force of ERISA § 502(a) is still stronger. In Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66 (1987), the Court determined that the similarity of the language used in the Labor Management Relations Act, 1947(LMRA), and ERISA, combined with the "clear intention" of Congress "to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction in like manner as § 301 of the LMRA," established that ERISA § 502(a)(1)(B)'s pre-emptive force mirrored the pre-emptive force of LMRA § 301. Since LMRA § 301 converts state causes of action into federal ones for purposes of determining the propriety of removal, see Avco Corp. v. Machinists, 390 U.S. 557 (1968), so too does ERISA § 502(a)(1)(B). Thus, the ERISA civil enforcement mechanism is one of those provisions with such "extraordinary pre-emptive power" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Metropolitan Life, 481 U.S. at 65-66.

542 U.S. at 208-09 (citations omitted).

But at no point in Davila did Justice Thomas give any credence to an argument that ERISA's extraordinary preemptive power is in some manner connected to or limited by the forum in which the ERISA claim is asserted. Without attaching the point to any viable precedent, the majority, discussing *ordinary preemption*, states that "'[w]here preemption involves a choice of law, rather than a choice of forum, it is an affirmative defense.' Piekarski v. Home Owners Sav. Bank, F.S.B., 956 F.2d 1484, 1489 (8th Cir. 1992)." Ante at 17 (alteration in original). However, as earlier noted, this case does not involve "ordinary" preemption. Instead, like the litigation in Pilot Life, a case originally filed in federal district court and Davila, a case removed to federal court, it involves complete preemption.

ERISA preempts state causes of action whenever, under an ERISA-regulated employee benefit plan, an individual is entitled to an employee benefit and where, in receiving the benefit, no legal duty (state or federal) independent of ERISA or the plan terms is violated. Davila, 542 U.S. at 210. "In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted by ERISA § 502(a)(1)(B)." Id. The instant case meets Davila's two-part test for complete preemption. Not only *could* Hollander have brought his claim under ERISA, he *did* bring his claim under ERISA. And, Hollander asserts no other independent legal duty redressable only under the IWPCL that is implicated by American's actions arising under the 1993 Agreement.

And, this circuit's precedent could not be more clear. We have said:

ERISA preempts state laws that conflict with its provisions or frustrate its objectives. The Supreme Court has repeatedly held that any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted. In In re Life Ins. Co. of N. Am., 857 F.2d 1190, 1194-95 (8th Cir. 1988), we held that ERISA preempts claims for penalties under the Missouri Vexatious Refusal to Pay Statute, Mo. Rev. Stat. § 375.420, explaining that "Pilot Life could not have stated with any greater clarity that the remedies afforded under ERISA are exclusive, and no state law purporting to supply additional remedies will escape the preemptive effect of [29 U.S.C.] § 1144(a)." We have consistently applied this principle. See Werdehausen v. Benicorp Ins. Co., 487 F.3d 660, 669 (8th Cir. 2007) ("any state law remedy is preempted by ERISA's comprehensive remedial scheme") (emphasis omitted).

Schoedinger v. United Healthcare of the Midwest, Inc., 557 F.3d 872, 875-76 (8th Cir. 2009) (some internal quotations and citations omitted). Hollander's actions were

designed to, and did, inject into his ERISA-based claim at least one additional state law remedy–liquidated damages arising from nonpayment of wages under Iowa Code § 91A.8. ERISA does not sanction such an enhanced damages remedy.

Even more on point is the matter of attorney fees in the district court's order of July 8, 2011, decided under the IWPCL. In Martin v. Arkansas Blue Cross and Blue Shield, we explain that "ERISA's fee-shifting provision unambiguously gives the district court discretion to award attorney fees to 'either party.' 29 U.S.C. § 1132(g). In making this determination, a district court abuses its discretion when there is a lack of factual support for its decision, *or when it fails to follow applicable law*." 299 F.3d 966, 969 (8th Cir. 2002) (en banc) (emphasis added). Our court then carefully outlined the elements of an award of attorney fees under ERISA, several of which vary markedly from Iowa precedent arising from interpretations of the IWPCL. For instance, the IWPCL provides a presumption that attorney fees will be paid to a prevailing claimant. Gabelmann v. NFO, Inc., 606 N.W.2d 339, 342 (Iowa 2000) (when employee prevails on wage claim, district court required to assess attorney fees). In Martin, however, this court held that a "presumption [that fees should be awarded] should not be employed in ERISA cases." 299 F.3d at 971-72.

And, it is virtually certain that an attorney fee of $261,783 (an amount equal to 76.3% of the remedial award) could not be awarded given a $343,000 ERISA damages judgment. The additional IWPCL fee award of $34,056.25 made the matter even more egregious. And, if the fee awards are viewed under the district court's calculations, the substantial recompense granted to Hollander's lawyers for the time spent in convincing the court to permit the clearly preempted state law claim would need to be excised from the award under an ERISA elements evaluation. Thus, there can be no doubt that the district court improperly ignored ERISA precedent in considering and entering its fee judgment.

Hollander may now attempt to argue, in spite of his several pleadings to the contrary, that the "extended earnings" specified in the 1993 Agreement, did not actually constitute ERISA pension funds, although he is almost certainly collaterally estopped from attempting to make such an argument at this point.

ERISA defines an employee pension plan as follows:

the terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program–

(i)     provides retirement income to employees, or
(ii)    results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.

29 U.S.C. § 1002(2)(A).  The 1993 Agreement provided both of these benefits to Hollander.  J.A. at 1185.

The Supreme Court gives ERISA a broad common-sense meaning.  Pilot Life, 481 U.S. at 47; see also Dakota, Minn. & E. R.R. Corp. v. Schieffer, 648 F.3d 935, 939 (8th Cir. 2011).  And even a cursory review of the relevant portions of the 1993 Agreement seem likely to support Hollander's pension plan position as a matter of law.  There is, however, some precedent that an individual contract providing benefits to a single executive employee is not an ERISA employee welfare benefit plan. Schieffer, 648 F.3d at 938.  But, Hollander was not an executive employee of American, the 1993 Agreement (as Hollander alleges) creates a pension plan under 29 U.S.C. § 1002(2)(A), not an employee welfare benefit plan defined in § 1002(1), and it is likely that this same contract provision was used for a broad class of American's agents and not just Hollander.

-35-

Schieffer explains further, however, why the district court lacked subject matter jurisdiction under the IWPCL in this case. Schieffer, president of DM & E, was terminated without cause, triggering several severance provisions. When he demanded state law arbitration, DM & E contended that any obligation to arbitrate was preempted by ERISA. The court noted that "Schieffer's arbitration demand included a demand for double damages under South Dakota's failure-to-pay-wages statute, *a remedy that clearly is preempted if the Employment Agreement is an ERISA plan*." Schieffer, 648 F.3d at 937 (emphasis added). While some of Schieffer's several severance provisions were found not to be ERISA pension plans and were arbitrable, the Schieffer court also noted that a claim concerning a single employee pension arrangement that constituted an ERISA plan, as we have in this case, was not arbitrable under state law. If an ERISA plan, said the court, "all state law remedies are preempted." Id. at 939.[13] Thus, the "extended earnings" remedy Hollander correctly alleges to be part of a "qualified employee pension benefit plan" under ERISA, 29 U.S.C. § 1002(2)(A), served to preempt the district court's subject matter jurisdiction over the IWPCL claim used by the court to award the disputed fees judgments.

The majority cannot reasonably argue, and I believe it does not, that the district court was not aware of the nature of the ERISA claim or that a preemption-producing ERISA claim was not in place. Indeed, the majority states "we do not question American Family's argument that evidence bearing on both [IWPCL and ERISA] claims [in the district court was] somewhat overlapping." Ante at 9. The majority discusses the existence of the term "extended earnings" under both the IWPCL and ERISA and the existence and status of Hollander as an employee of American under Darden, 503 U.S. at 323. Ante at 9-10. While the district court did not ultimately rule on the merits of the ERISA issue, the continuing viability of the claim was ruled upon

---

[13]See also Treasurer, Trs. of Drury Indus., Inc. Health Care Plan and Trust v. Goding, 692 F.3d 888, 897 (8th Cir. 2012) (holding that state law conversion claim was preempted by ERISA).

by the court in the course of the trial. Indeed, the parties, on the record, just prior to close of all the evidence, specifically stated that they had offered all the evidence they considered necessary on the ERISA question and affirmatively submitted the issue to the district court. J.A. at 1108-09, 1125. American then made a Rule 50 motion for judgment as a matter of law seeking, in part, dismissal of Hollander's ERISA claim. J.A. at 1109. The next day, the district court stated, "on the Rule 50 [ERISA dismissal] motion, I'm denying [that]. . . . on the 15(b) motion to amend [to assert the IWPCL claim by Hollander], I'm granting that motion." J.A. at 1124. Thus, the district court, as both the trier of fact and concluder of law on the issue, affirmatively sustained the viability of the completely preempting ERISA claim.

This makes the waiver argument problematic. American did substantively advance ERISA preemption both at trial and on appeal although, concededly, it could have been more articulate in doing so.[14] Additionally, Hollander had an "obligation to show, by a preponderance of the evidence, facts supporting jurisdiction." Schubert v. Auto Owners Ins. Co., 649 F.3d 817, 822 (8th Cir. 2011). And, since subject matter jurisdiction was at issue, the trial court also had an obligation to evaluate it. Id. at 820-21 (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006)). Indeed,

----

[14]The majority states,"[b]ecause American Family failed to raise ERISA preemption before the district court, we may not consider the issue sua sponte on appeal," ante at 18-19 (footnote omitted) (citing Roberts v. Apfel, 222 F.3d 466, 470 (8th Cir. 2000)), and later, that American "waived the argument on appeal," noting that an argument is abandoned and unreviewable if not raised on appeal, ante at 19 n.9 (citing Lockley v. Deere & Co., 933 F.2d 1378, 1386-87 (8th Cir. 1991)). It is hard to imagine two cases less supportive of the proposition for which they are advanced–i.e., waiver of subject matter jurisdiction. Apfel is a Social Security appeal in which the Administrative Law Judge's failure to attach to its opinion a psychiatric review technique form was first raised by the claimaint on appeal. 22 F.3d at 470. In Lockley, the unreviewable abandoned argument was failure to include in the record on appeal testimony supporting cautionary instructions submitted by Deere and not given by the trial court. 933 F.2d at 1386-87. Subject matter jurisdiction was not an issue in either case.

according to the majority, the trial court in the face of the ERISA cause of action, affirmatively chose to reject the federal claim and, instead, to rule upon the state IWPCL claim.

The majority opinion states that I (the dissent) "fail[] to note . . . the salient distinction between complete and ordinary preemption in the relevant line of cases: complete preemption has attached to ERISA claims *only in the removal context*, where an ERISA claim provides the sole basis of federal subject matter jurisdiction." Ante at 17 (emphasis added). This statement reflects an almost complete transmogrification of Supreme Court and Eighth Circuit precedent.

The majority's premise is supported by neither logic nor Supreme Court jurisprudence. The majority does not explicate how or why the "extraordinary preemptive power" of ERISA that is embedded with clearly enunciated congressional policy as interpreted by intelligible Supreme Court language should blink on and off like a traffic light depending upon how a preempting ERISA cause of action happens to arrive for adjudication in a fully authorized judicial forum. Perhaps this is because, given Supreme Court and circuit precedent, there is no logical or lawful explanation.

By congressional mandate there are four ways to assert an ERISA claim in two separate judicial forums, state and federal. Under 29 U.S.C. § 1132(e) "[s]tate courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of [ERISA-benefits] *actions* under [§ 1332(a)(1)(B)]." (Emphasis added). A state forum's jurisdiction is, of course, tentative because 28 U.S.C. § 1441(a) permits removal of an ERISA benefits claim from a state tribunal to a federal district court. E.g., Davila, 542 U.S. at 207. An ERISA-benefits action may also be asserted directly in the federal district court under either federal question jurisdiction, 28 U.S.C. § 1331, e.g., Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 931 (8th

Cir. 1999), or, in a proper case, diversity jurisdiction under, 28 U.S.C. § 1332,[15] e.g., Pilot Life, 481 U.S. at 43. However, in each of the four forum possibilities, the same "extraordinary pre-emptive power" is at work to convert an ordinary state law claim into one stating, exclusively, an ERISA benefits cause of action. Metro. Life, 481 U.S. at 65.

If an ERISA benefits cause of action is filed and litigated to a conclusion in a state court of competent jurisdiction, ERISA totally preempts all state laws that conflict with its provisions or frustrate its objectives. As recently explained in Nitro-Lift Technologies, L.L.C. v. Howard, 133 S. Ct. 500 (2012) (per curiam), a case in which a unanimous Supreme Court held that the State of Oklahoma must not burden the Federal Arbitration Act with "adequate and independent" state policy grounds, the Court explained that federal statutes (such as ERISA) as interpreted by the Supreme Court, are the supreme law of the land and must be followed. Id. at 502-04. Nitro-Lift noted that it is the Supreme Court's responsibility to say what a federal statute means and once the Court has spoken, it is the duty of other courts, federal and state, to respect that understanding of the governing rule of law. Id. at 503. Here, federal ERISA law and its preemptive force has been established by the Supreme Court. So, even if a specific state statute, such as the IWPCL, conflicts with a general federal statute such as ERISA, the federal statute controls. Thus, ERISA preemption would

---

[15]Citizenship of parties in different states provides a federal forum for a claim based exclusively on state law if the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. An amount in controversy that exceeds this amount provides the court subject matter jurisdiction, that is, authority to hear the case. Radil v. Sanborn Western Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004) ("To establish subject matter jurisdiction under 28 U.S.C. § 1332, a party must show that . . . the amount in controversy exceeds $75,000."); Denny v. Orient Lines, 375 F. Supp. 2d 1320, 1322 (D.N.M. 2005). Congress may specifically limit or deny state law subject matter jurisdiction, as in § 1332, or deny such jurisdiction by determining that a particular federal cause of action completely preempts a designated federal field of endeavor as in ERISA.

control in state court. Likewise, an ERISA cause of action filed in the first instance in federal district court or removed to federal court from a state court, would control as a matter of preemption. The majority's conclusions to the contrary are simply wrong.

In this action, the federal district court had jurisdiction to determine its subject matter jurisdiction over the IWPCL cause of action, <u>Kircher v. Putnam Funds Trust</u>, 547 U.S. 633, 644 (2006); <u>Atkinson v. Morgan Asset Mgmt., Inc.</u>, 658 F.3d 549, 552 (6th Cir. 2011), and an obligation to dismiss the action if it had none. <u>Schubert</u>, 649 F.3d at 822. It had none. Thus, in the face of the ERISA cause of action, the late-blooming IWPCL claim should have been deemed "dead on arrival" when it appeared at the federal courthouse door.

## III.    CONCLUSION

Accordingly, the district court had no subject matter jurisdiction over the IWPCL cause of action and erred in its award of attorney fees on July 8, 2011, and August 3, 2011. The majority reaches a result but it does not follow the law. I dissent.

_____