# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————

No. 10-2484

————

Dakota, Minnesota & Eastern     \*
Railroad Corporation,     \*
    \*
      Plaintiff - Appellant,     \*   Appeal from the United States
    \*   District Court for the
    v.     \*   District of South Dakota.
    \*
Kevin V. Schieffer,     \*
    \*
      Defendant - Appellee.     \*

————

Submitted: February 16, 2011
Filed: August 11, 2011

————

Before LOKEN, MELLOY, and SHEPHERD, Circuit Judges.

————

LOKEN, Circuit Judge.

Kevin Schieffer became President and CEO of the Dakota, Minnesota & Eastern Railroad ("DM&E") in 1996. In December 2004, anticipating a change of control, Schieffer and DM&E entered into an Employment Agreement to encourage his ongoing employment and to provide lucrative benefits should he be terminated without cause or resign for good reason, terms defined in the Agreement. In October 2008, with regulatory approval of a merger imminent, DM&E terminated Schieffer without cause, triggering the Employment Agreement's various severance provisions. Post-merger disputes arose as to the amounts DM&E owed. Schieffer filed a demand for arbitration under the Employment Agreement's arbitration provision. DM&E

commenced this action to enjoin the arbitration as preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*.

DM&E's complaint alleged (i) federal question jurisdiction under 28 U.S.C. § 1331 because the severance dispute "arises out of an [ERISA] employee benefit plan" and therefore state law claims are preempted, and (ii) supplemental jurisdiction under 28 U.S.C. § 1367 over non-ERISA claims. Applying our decision in Crews v. General American Life Insurance Co., 274 F.3d 502 (8th Cir. 2001), the district court granted Schieffer's motion to dismiss because the Employment Agreement is not an ERISA employee benefit plan.[1] DM&E appeals, arguing the Agreement is a severance plan covered by ERISA, like the severance plan in Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 934-35 (8th Cir. 1999). Whether a contract is an ERISA plan is a mixed question of fact and law that we review *de novo*. Although we agree with the district court's resolution of this key issue, we are not convinced the court had *no* jurisdiction over DM&E's complaint and therefore remand.

## I.

ERISA provides that a participant or beneficiary may sue in federal court to recover benefits due under an employee benefit plan. 29 U.S.C. § 1132(a)(1)(B). ERISA also expressly preempts "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy." Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004); see 29 U.S.C. § 1144(a). Schieffer's arbitration demand included a demand for double damages under South Dakota's failure-to-pay-wages statute, a remedy that clearly is preempted if the Employment Agreement is an ERISA plan. See, e.g., Schoedinger v. United Healthcare of the Midwest, Inc., 557 F.3d 872, 875-76 (8th Cir.), cert. denied, 130 S. Ct. 257 (2009). DM&E argues that

---

[1]There is no diversity jurisdiction under 28 U.S.C. § 1332, and the Federal Arbitration Act is not an independent source of federal jurisdiction.

the Agreement is an ERISA plan and therefore the district court had subject matter jurisdiction to enjoin Schieffer's attempt to invoke preempted state law remedies.

In Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987), the Supreme Court construed 29 U.S.C. § 1144(a) as not preempting a Maine statute that required employers to provide one-time severance payments in the event of a plant closing. The Court explained:

> Congress intended pre-emption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations. This concern only arises, however, with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation. It is for this reason that Congress pre-empted state laws relating to *plans*, rather than simply to *benefits*. . . . The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation.

Id. at 11-12 (emphasis in original). In Kulinski v. Medtronic Bio-Medicus, Inc., 21 F.3d 254, 257 (8th Cir. 1994), we concluded that Fort Halifax "delineated the standard to be applied" when determining whether an employer's plan to provide severance benefits to select employees "falls within ERISA's ambit."[2] As we subsequently explained in applying Kulinski's ruling in Crews, 274 F.3d at 506:

> When determining whether payments require an ongoing administrative scheme, we consider whether the payments are one-time lump sum payments or continuous payments, whether the employer undertook any long-term obligation with respect to the payments, whether the

---

[2]The analogy is imperfect because the Supreme Court in Fort Halifax had no occasion to consider the purposes underlying ERISA *remedial* preemption -- to avoid imposing non-uniform liabilities and remedies on plan administrators and fiduciaries and the limited assets they administer on behalf of all beneficiaries.

severance payments come due upon the occurrence of a single, unique event or any time that the employer terminates employees, and whether the severance arrangement under review requires the employer to engage in a case-by-case review of employees.

The district court applied this test in concluding that the Employment Agreement is not an ERISA employee benefit plan. While we do not disagree with the district court's application of the Crews factors, we conclude that the analysis was unnecessary. Kulinski and Crews involved employer severance benefits made available to classes of employees. Here, on the other hand, the Employment Agreement was an individually negotiated contract between DM&E as employer and Schieffer, a single employee. Whether such a "one-person" contract may be an ERISA plan is a question of first impression for this court.[3]

As relevant here, ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purposes of providing for its participants or their beneficiaries . . . (B) any benefit described in section 186(c) of this title [other than pension benefits]." 29 U.S.C. § 1002(1). Although severance benefits are clearly among those described in § 186(c), the words "plan" and "program" in § 1002(1) strongly imply benefits that an employer provides to a class of employees. Even more significantly, the plain language of this statute -- the reference to "participant*s* or *their* beneficiaries" -- reflects the congressional intent that a covered "plan" is one that provides welfare benefits to more than one person. See Metropolitan Stevedore Co. v. Rambo, 515 U.S. 291, 296 (1995) ("Ordinarily the

_____

[3]DM&E argues that the Agreement is a "top-hat" ERISA plan. "A so-called 'top-hat' plan is unfunded, provides 'deferred compensation for a select group of management or highly compensated employees,' and is exempted from certain ERISA requirements." Emmenegger, 197 F.3d at 932 n.6, citing 29 U.S.C. §§ 1051(2), 1081(a)(3), and 1101(a)(1). "But a 'top hat' plan must be an ERISA 'plan' in the first instance." Id.

-4-

legislature by use of a plural term intends a reference to more than one thing")
(quotation and citations omitted). Although 1 U.S.C. § 1 provides that "unless the
context indicates otherwise . . . words importing the plural include the singular," that
statute is only applied where "necessary to carry out the evident intent of the statute."
First Nat'l Bank in St. Louis v. Missouri, 263 U.S. 640, 657 (1924). Here, Congress's
use of the plural is evidence of its intent.

We recognize that several circuit court decisions have concluded that a contract
with a single employee to provide post-termination benefits *may* be a "one-person"
ERISA plan if it satisfies the "administrative scheme" criteria of Fort Halifax. See
Cvelbar v. CBI Illinois Inc., 106 F.3d 1368, 1376 (7th Cir. 1997) (cautioning that
"arrangements that involve a single employee [require] particularly careful scrutiny");
Biggers v. Wittek Indus., 4 F.3d 291, 297 (4th Cir. 1993); Williams v. Wright, 927
F.2d 1540, 1545-47 (11th Cir. 1991). But the reasoning in these opinions was quite
perfunctory, and none considered the plain language of § 1002(1). Moreover, none
considered the broader context of this preemption issue. Congress in the National
Labor Relations Act broadly preempted state laws that interfere with multi-employee
collective bargaining, and in ERISA broadly preempted state laws that interfere with
multi-employee benefit plans. But Congress has never preempted state laws that
regulate and enforce individual employment contracts between employers and their
executives. That remains an important prerogative of the States, no matter how
complex a contract may be to administer. Neither the administrative nor the remedial
purposes of ERISA preemption apply to the resolution of contractual disputes
between an employer and a single, salaried employee. Considering ERISA's statutory
language, purpose, and historical context, we conclude that an individual contract
providing severance benefits to a single executive employee is not an ERISA
employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1).[4]

---

[4]Apparently, the U.S. Department of Labor has in the past taken inconsistent
positions on this issue. See Cvelbar, 106 F.3d at 1376. ERISA's predecessor statute,
the Welfare and Pension Plans Disclosure Act, Pub. L. No. 85-836, § 4(b)(4), 72 Stat.

## II.

Our determination that the Employment Agreement is not an ERISA plan does not end the subject-matter-jurisdiction inquiry. ERISA preempts all state laws that "relate to" an employee benefit plan. 29 U.S.C. § 1144(a). Though "relate to" has generated many difficult interpretive issues, in general the Supreme Court gives it a "broad common-sense meaning, such that a state law 'relates to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987) (quotations omitted). Here, further questions arise because the Employment Agreement included two provisions that may "relate" the Agreement to other DM&E programs that are ERISA plans:

> 3. <u>Compensation</u>. Compensation shall include Bonus Shares and the following three components:
>
> \*   \*   \*   \*   \*
>
> (c) <u>Employee Benefits</u>. Executive shall be eligible to participate in all employee health, welfare, and retirement benefit plans and programs made available generally to senior executives of the Company, and to the extent provided in such plans and programs, the Executive's spouse and other dependents shall be eligible to participate therein. In the event the Executive is not permitted to participate in such plans or programs, whether by law or the terms thereof, the Company shall periodically pay the Executive, in lieu of such participation, a cash payment equal to the amount the Company would have contributed toward the Executive's participation in the plan or programs.

---

998-999 (1958), excluded plans covering less than 26 employees. Although ERISA lifted this numerical limitation, had Congress intended to expand federal preemption to include single-employee agreements, we believe it would have done so expressly.

## 5. Termination of Employment

In the event that either Party terminates the Executive's employment hereunder . . . . [t]he company shall continue to provide Executive the Employee Benefits described section 3(c) of this Agreement for a period of not less than three years from the date on which the Severance Payment is paid in full . . . .

In October 2008, DM&E elected to pay Schieffer a lump-sum cash severance payment pursuant to Section 5. Schieffer's arbitration demand alleged that DM&E's lump-sum payment "breached its obligation to provide employee benefits under [paragraphs 3(c) and 5 of] the Employment Agreement" by (a) terminating health insurance coverage prematurely; (b) failing to pay life and disability insurance coverage for the full period required by paragraph 5; (c) miscalculating retirement benefits due; and (d) failing to pay "vacation accruals and banked vacation cash compensation payable to terminated employees under the employment benefit programs." If these are demands for the payment of benefits under ERISA plans, as amended by the Employment Agreement, then *to that extent* all state law remedies are preempted and the district court has subject matter jurisdiction over portions of DM&E's complaint.[5] On the other hand, if these are demands under a free-standing single-employee contract that simply pegged DM&E's payment obligations to amounts that would have been due under ERISA plans, there is no preemption -- and no subject matter jurisdiction. Compare Antolik v. Saks, Inc., 463 F.3d 796, 803 (8th Cir. 2006), and Johnson v. U.S. Bancorp., 387 F.3d 939, 942 (8th Cir. 2004), with Gresham v. Lumbermen's Mut. Cas. Co., 404 F.3d 253, 259 (4th Cir. 2005), Eide v. Grey Fox Tech. Servs. Corp., 329 F.3d 600, 607 (8th Cir. 2003), and Crews, 274 F.3d

---

[5]The district court would also have discretionary supplemental jurisdiction over DM&E's remaining claims. For example, Schieffer's demand included claims under a 1994 Consulting Agreement and claims that may require interpretation of an October 2007 "Gross-Up Agreement" designed to offset his excise tax liability. While those agreements are not ERISA plans, the court's supplemental jurisdiction may include determining whether disputes under those agreements are arbitrable.

at 505. As neither the parties nor the district court considered this jurisdictional issue, we must remand.

For the foregoing reasons, the district court's judgment of dismissal is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

———————————————————