BEAM, Circuit Judge,
concurring and dissenting.
I concur in the majority’s affirmance of the district court’s judgment of May 9, 2011, awarding Hollander $343,000 based upon a stipulated amount of unpaid “extended earnings” arising under the American Family Agent Agreement dated January 1, 1993 (1993 Agreement).[10] The parties agreed that this amount was due Hollander if he did not breach the Agreement and both the trial court and an advisory jury determined that he did not.[11] I *357 dissent from the majority’s affirmance of the district court’s orders of July 8, 2011, and August 8, 2011, awarding Hollander $261,788 and $34,056.25 in contested attorney fees pursuant to section 91A.8 of the IWPCL, a state law claim clearly preempted by the federal ERISA plan set forth in the 1993 Agreement. An ERISA benefits due claim under this plan was in full force and effect at all times relevant to these orders.
1. BACKGROUND
A. The ERISA Claim
By way of a complaint filed in federal district court, American Family Mutual Insurance Company (American) asserted a breach of contract claim (and some other abandoned or voluntarily dismissed claims no longer relevant here) against Hollander based upon the 1993 Agreement. On June 2, 2009, Hollander answered American’s complaint and included a counter complaint in which he asserted several state and federal law causes of action purportedly arising under the agreement. But, the Hollander counter pleading that is material to this dissent arises exclusively under federal law and appears as Count IV. In Count IV, Hollander set forth an ERISA claim. In this context he averred that the “extended earnings” plan found in the 1993 Agreement is a “qualified employee pension benefit plan” under ERISA, 29 U.S.C. § 1002(2)(A). Hollander also alleged in his ERISA counterclaim that he “is entitled to damages, including reasonable attorney fees and costs, arising from [American’s] wrongful termination of his pension benefits under the 1993 Agreement.” Hollander embellished these allegations through his trial brief, wherein he argued extensively that for purposes of his 29 U.S.C. § 1132(a)(1)(B) ERISA benefits due claim he met all the requirements necessary to support such a cause of action. He specifically cited as applicable to his claim Harris v. Arkansas Book Co., 794 F.2d 358, 360 (8th Cir.1986) (adopting the Donovan v. Dillingham, 688 F.2d 1367 (11th Cir.1982) test for determining whether a plan is an ERISA-qualified plan) and Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 323-24, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (adopting the common law definition of “employee” for purposes of ERISA cases) and set forth a litany of factors from the 1993 Agreement as validation of this ERISA claim. This claim remained in dispute in this litigation until July 27, 2011, when it was voluntarily dismissed by Hollander. Indeed, as late as July 19, 2011, the district court entered an order directing the parties “to submit their positions as to the proposed procedure for resolution of defendant’s pending ERISA claim.” The district court’s IWPCL judgments awarding the disputed attorney fees were, as earlier noted, filed on July 8, 2011, and August 3, 2011.
B. The IWPCL Claim
An IWPCL claim did not enter the picture until some twenty-one months after the expiration of the pleading deadline imposed by the trial court. It came via Hollander’s belated motion to amend the pleadings pursuant to Federal Rule of Civil Procedure 15(a). His Rule 15(a) motion sought leave to plead an IWPCL claim based upon the 1993 Agreement, specifically alleging that “[t]he facts and documents upon which [Hollander’s] proposed [Rule 15(a) ] amendment is based are the same facts and documents upon which Count IV of [Hollander’s] counterclaims, under [ERISA] are based.” The ERISA claim, as above indicated, remained actively *358 pending in the case until Hollander dismissed it by stipulation on July 27, 2011.
As the panel majority correctly explains, such a time-delinquent motion is "granted only “when justice so requires,” Rule 15(a)(2), and such requirement must be based upon “good cause” resulting from changes in the law or the emergence of new facts, ante at 346. Here, there was no good cause shown for the delay in making the claim. Neither was there evidence of the emergence of new facts or relevant changes in the law. Indeed, in this case, not only were there no “changes in the law,” but the attempted assertion of a new state law claim within the contours of the pending ERISA claim, as I will shortly explain in more detail, violated complete preemption precedent established by the Supreme Court twenty-five years ago in Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 62-63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), and by additional precedent regarding subject matter jurisdiction in the face of complete preemption established by this circuit in 1996, Gaming Corp. of America v. Dorsey & Whitney, 88 F.3d 536 (8th Cir.1996). American contended at every opportunity that such amendments, coming within seventeen days of the commencement of trial, were grossly prejudicial, especially since it had little, if any, chance to prepare to meet the elements of the new claim. Hollander’s Rule 15(a) motion was correctly denied, not just because it violated Rule 16(b)(4) (governing pretrial conferences and scheduling), but also because it violated the very essence of Rule 15’s fair trial policies and longstanding federal court jurisprudence concerning subject matter jurisdiction in the face of complete preemption.
C. The Trial
The trial commenced, evidence was presented and American rested. At this point, Hollander again orally advanced the same IWPCL claim, this time through a Rule 15(b)(2) motion. He sought to insert the IWPCL claim, purportedly to conform the pleadings to the trial evidence that had been adduced. The district court granted this new motion. This was both an abuse of discretion and a violation of well established federal precedent.
In support of this motion, Hollander’s lawyer stated as follows:
Mr. Hollander, at this time moves for leave to amend his pleading under Rule 15(b) to add to conform to the proof [of] his theory under Chapter 91A of the Code of Iowa, Wage Payment Collection Law....
The ERISA claim has been in the case from the outset ... and effectively the primary difference between the ERISA claim and the [IWPCL] claim ... is that we’re dealing with the subject of deferred commissions and the possibility that if the nonpayment has been willful, it will entitle Mr. Hollander to be subject to receive liquidated damages for unpaid amounts.
J.A. at 1079 (emphasis added). In essence, Hollander, after conceding that the ERISA and IWPCL claims were essentially identical except that he could not claim extended damages or an enhanced attorney fee for “willful” conduct under ERISA, requested (and was granted) a Rule 15(b) amendment adding the IWPCL claim based upon the “facts and documents” supporting his Count IV ERISA claim but importing the extended damages and fee remedies found only in the IWPCL. American, in written opposition to the oral 15(b) motion, continued to argue the substance of an ERISA preemption violation given the insertion of the newly minted IWPCL claim. American argued the IWPCL claim was, as Hollander contended, almost the same as but slightly differ *359 ent from his existing ERISA remedies, specifically in matters of attorney fees and liquidated damages as governed by IWPCL. American also raises these same arguments in this appeal. While it could have been more precise in its arguments, American more than “adequately raised the substance of the [preemption] issue ... even though [it] did not use the word [preemption]” in its arguments to the district court and to this court. United States v. Pietrantonio, 637 F.3d 865, 869 n. 1 (8th Cir.2011). The majority concedes that the district court tried this case as an IWPCL claim to the exclusion of the ERISA claim asserted in the original pleadings. Indeed, the majority approvingly quotes the district court as follows:
The [district] court is satisfied that defendant’s [Hollander’s] extended earnings claim is a claim of wages under [IWPCL] § 91A, arising out of the same conduct set out in the original pleadings, was substantively the same claim pressed by [Hollander] throughout the case, and was inextricably intertwined with the defense of [American Family’s] contention that defendant was not entitled to extended earnings.
Ante at 347 (third and fifth alterations in original).
11. DISCUSSION
It is beyond dispute that ERISA presents complete preemption pursuant to the broad and expansive sweep of 29 U.S.C. § 1144(a). Metro. Life, 481 U.S. at 66, 107 S.Ct. 1542. And, at least in this circuit, complete preemption is a jurisdictional doctrine that applies where the federal preemptive power is complete. Gaming Corp., 88 F.3d at 542; Firstcom, Inc. v. Qwest Corp., 555 F.3d 669, 677 n. 6 (8th Cir.2009). Accordingly, the proposition that a state law claim is preempted by § 1144(a) is an issue of subject matter jurisdiction that may be raised at any time, including sua sponte by the court. Auto-Owners Ins. Co. v. Tribal Ct. of the Spirit Lake Indian Reservation, 495 F.3d 1017, 1020 (8th Cir.2007); Lundeen v. Canadian Pac. Ry. Co., 447 F.3d 606, 611 (8th Cir.2006), reversed on other grounds by, Lundeen v. Canadian Pac. Ry. Co., 532 F.3d 682 (8th Cir.2008).
The majority, notwithstanding the almost completely duplicating features of the IWPCL claim when compared with the ERISA claim, rejects ERISA preemption of the IWPCL claim and in doing so erroneously argues that the “scope of ERISA preemption should be analyzed in light of LMRA [the Labor Management Relations Act] precedent.” Ante at 354. After purportedly viewing the conclusions of “sister circuits,” the majority concludes that in the face of the IWPCL state law claim, the ERISA preemption was waivable, citing cases, and presumably, that ERISA preemption was waived by American. The majority’s theory is best described, and perhaps best refuted, by Wolf v. Reliance Standard Life Insurance Co., 71 F.3d 444 (1st Cir.1995),[12] cited by the majority as the principal support for its “waivability” contention.
The Wolf court conceded the argument “that because there is a ‘compelling policy’ in favor of application of federal ERISA law to [a duplicative or similar state law] claim, ERISA preemption is jurisdictional and therefore nonwaivable.” Id. at 447. In doing so, it correctly notes that
*360 [t]he foundation of the argument is ERISA’s broad preemption provision: ERISA [with a few inapplicable exceptions] “shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....” 29 U.S.C. § 1144(a). One of Congress’s intentions in enacting ERISA, as divined through legislative history, was to encourage the growth of private employee benefit plans by replacing diverse state laws with a nationally uniform federal common law regulating employee benefit plans. Treating ERISA preemption as non-jurisdictional and therefore waivable would, so the argument goes, frustrate that intent, subjecting employee benefit plans to regulation and litigation under fifty nonuniform bodies of state law. The costs of adapting to and litigating under nonuniform state law and the potential for liability and damages beyond that permitted under ERISA would deter employers from enacting benefits plans. Thus, courts should hold that ERISA preemption is jurisdictional and not waivable, consistent with the congressional intent to create and apply a uniform federal law regulating employee benefit plans.
Id. (second alteration in original) (footnote omitted). Wolf recognized that the above argument is substantially based upon the Supreme Court’s “at length” analysis of the legislative history behind ERISA’s preemption provision in Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 44-46, 52-57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), a case filed in federal district court under 28 U.S.C. § 1332’s diversity jurisdiction.
Wolf further conceded that
[t]he Pilot Life decision explains that ERISA’s preemption clause and civil enforcement scheme entirely displaced state law causes of action for benefits claims under ERISA plans. If state law is “displaced,” then arguably there is no subject matter jurisdiction over a state law cause of action for benefits due. Lack of subject matter jurisdiction is, of course, a nonwaivable defense and may be raised at any time. Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).
71 F.3d at 447 (some citations omitted). Wolf then went astray. It imported into its analysis of Pilot Life’s ERISA preemption decision a waivability theory based upon misuse of separate and distinct labor law jurisprudence unrelated to Pilot Life issues and totally unmentioned in Pilot Life. The Supreme Court in Pilot Life simply used its earlier description of “the powerful preemptive force of § 301 of the LMRA,” which “displaced] all state actions for violation of contracts between an employer and labor organization,” 481 U.S. at 55, 107 S.Ct. 1549, as an analogue to compare the § 301 preemption with its Pilot Life characterization of the equally powerful ERISA preemption. Nothing more.
Wolf’s improvident mixing of unrelated NLRB forum designation issues with Pilot Life’s ERISA choice-of-law concerns, prompts mention of Justice Ginsburg’s recent observation for a unanimous Supreme Court rejecting a similarly disjointed government argument. The Justice said:
In this regard we recall Chief Justice Marshall’s sage observation that “general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.”
*361 Ark. Game and Fish Comm’n v. United States, — U.S.-, 133 S.Ct. 511, 520, 184 L.Ed.2d 417 (2012) (quoting Cohens v. Virginia, 6 Wheat. 264, 19 U.S. 264, 399, 5 L.Ed. 257 (1821)). Unfortunately for Wolf, and the majority, the Supreme Court in Pilot Life spoke not a single word of forum designation or forum selection in the context of complete ERISA preemption. Indeed, in its citation of the ERISA Conference Report’s reference to the LMRA, Pilot Life simply quoted the report as follows: “All such [ERISA] actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those [actions] brought under section 301 of the Labor-Management Relations Act of 1917.” 481 U.S. at 55, 107 S.Ct. 1549. How this single reference turns into waivability of subject matter jurisdiction in the ERISA context is not well explained in Wolf or by the majority.
But of even greater importance, since Pilot Life and Wolf, the Supreme Court has again unequivocally described the focus, breadth, depth and extraordinary preemptive power of ERISA as clearly dictated by congressional intent and policy.
In Aetna Health Inc. v. Davila, 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004), a case removed from a Texas state forum to federal district court pursuant to 28 U.S.C. § 1441(a), Justice Thomas, speaking for a unanimous court, forcefully lays waste to the majority’s ERISA waiver contentions. In Davila, the Supreme Court noted that the Court of Appeals correctly recognized that state causes of action that duplicate or fall within the scope of an ERISA § 502(a) remedy are completely preempted and totally and peremptorily removable from state to federal court, but that the circuit otherwise failed to recognize the power of the ERISA preemption. Id. at 214-16, 124 S.Ct. 2488. Rejecting “form over substance” relabeling of state claims to evade the preemptive scope of ERISA, the Supreme Court again explained the nature of the ERISA preemption and that it provides a remedy for a federal cause of action that is in no way attenuated by the selection or designation of a particular forum. Id. at 214, 124 S.Ct. 2488 (quotation omitted).
Justice Thomas again explained that Congress enacted ERISA to “protect ... the interests of participants in employee benefit plans and their beneficiaries” by setting out substantive regulatory requirements for employee benefit plans and to “provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.” 29 U.S.C. § 1001(b). The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive preemption provisions, see ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be “exclusively a federal concern.” Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).
As the Court said in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 [107 S.Ct. 1549, 95 L.Ed.2d 39] (1987):
“[Tjhe detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and benefi *362 ciaries were free to obtain remedies under state law that Congress rejected in ERISA. ‘The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.’ ” Id. at 54 [107 S.Ct. 1549] (quoting [Massachusetts Mut. Life Ins. Co. v.] Russell, supra, [473 U.S. 134] at 146 [105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) ].)
Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empt-ed.
The pre-emptive force of ERISA § 502(a) is still stronger. In Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66 [107 S.Ct. 1542, 95 L.Ed.2d 55] (1987), the Court determined that the similarity of the language used in the Labor Management Relations Act, 1947(LMRA), and ERISA, combined with the “clear intention” of Congress “to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction in like manner as § 301 of the LMRA,” established that ERISA § 502(a)(l)(B)’s pre-emptive force mirrored the pre-emptive force of LMRA § 301. Since LMRA § 301 converts state causes of action into federal ones for purposes of determining the propriety of removal, see Avco Corp. v. Machinists, 390 U.S. 557 [88 S.Ct. 1235, 20 L.Ed.2d 126] (1968), so too does ERISA § 502(a)(1)(B). Thus, the ERISA civil enforcement mechanism is one of those provisions with such “extraordinary pre-emptive power” that it “converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.” Metropolitan Life, 481 U.S. at 65-66 [107 S.Ct. 1542],
542 U.S. at 208-09, 124 S.Ct. 2488 (citations omitted).
But at no point in Davila did Justice Thomas give any credence to an argument that ERISA’s extraordinary preemptive power is in some manner connected to or limited by the forum in which the ERISA claim is asserted. Without attaching the point to any viable precedent, the majority, discussing ordinary preemption, states that “ ‘[w]here preemption involves a choice of law, rather than a choice of forum, it is an affirmative defense.’ Piekarski v. Home Owners Sav. Bank, F.S.B., 956 F.2d 1484, 1489 (8th Cir.1992).” Ante at 353 (alteration in original). However, as earlier noted, this case does not involve “ordinary” preemption. Instead, like the litigation in Pilot Life, a case originally filed in federal district court and Davila, a case removed to federal court, it involves complete preemption.
ERISA preempts state causes of action whenever, under an ERISA-regulated employee benefit plan, an individual is entitled to an employee benefit and where, in receiving the benefit, no legal duty (state or federal) independent of ERISA or the plan terms is violated. Davila, 542 U.S. at 210, 124 S.Ct. 2488. “In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant’s actions, then the individual’s cause of action is completely preempted by ERISA § 502(a)(1)(B).” Id. The instant case meets Davila’s two-part test for complete preemption. Not only could Hollander have brought his claim under *363 ERISA, he did bring his claim under ERISA. And, Hollander asserts no other independent legal duty redressable only under the IWPCL that is implicated by American’s actions arising under the 1993 Agreement.
And, this circuit’s precedent could not be more clear. We have said:
ERISA preempts state laws that conflict with its provisions or frustrate its objectives. The Supreme Court has repeatedly held that any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empt-ed. In In re Life Ins. Co. of N. Am., 857 F.2d 1190, 1194-95 (8th Cir.1988), we held that ERISA preempts claims for penalties under the Missouri Vexatious Refusal to Pay Statute, Mo.Rev. Stat. § 375.420, explaining that “Pilot Life could not have stated with any greater clarity that the remedies afforded under ERISA are exclusive, and no state law purporting to supply additional remedies will escape the preemptive effect of [29 U.S.C.] § 1144(a).” We have consistently applied this principle. See Werdehausen v. Benicorp Ins. Co., 487 F.3d 660, 669 (8th Cir.2007) (“any state law remedy is preempted by ERISA’s comprehensive remedial scheme”) (emphasis omitted).
Schoedinger v. United Healthcare of the Midwest, Inc., 557 F.3d 872, 875-76 (8th Cir.2009) (some internal quotations and citations omitted). Hollander’s actions were designed to, and did, inject into his ERISA-based claim at least one additional state law remedy—liquidated damages arising from nonpayment of wages under Iowa Code § 91A.8. ERISA does not sanction such an enhanced damages remedy.
Even more on point is the matter of attorney fees in the district court’s order of July 8, 2011, decided under the IWPCL. In Martin v. Arkansas Blue Cross and Blue Shield, we explain that “ERISA’s fee-shifting provision unambiguously gives the district court discretion to award attorney fees to ‘either party.’ 29 U.S.C. § 1132(g). In making this determination, a district court abuses its discretion when there is a lack of factual support for its decision, or when it fails to follow applicable law.” 299 F.3d 966, 969 (8th Cir.2002) (en banc) (emphasis added). Our court then carefully outlined the elements of an award of attorney fees under ERISA, several of which vary markedly from Iowa precedent arising from interpretations of the IWPCL. For instance, the IWPCL provides a presumption that attorney fees will be paid to a prevailing claimant. Gabelmann v. NFO, Inc., 606 N.W.2d 339, 342 (Iowa 2000) (when employee prevails on wage claim, district court required to assess attorney fees). In Martin, however, this court held that a “presumption [that fees should be awarded] should not be employed in ERISA cases.” 299 F.3d at 971-72.
And, it is virtually certain that an attorney fee of $261,783 (an amount equal to 76.3% of the remedial award) could not be awarded given a $343,000 ERISA damages judgment. The additional IWPCL fee award of $34,056.25 made the matter even more egregious. And, if the fee awards are viewed under the district court’s calculations, the substantial recompense granted to Hollander’s lawyers for the time spent in convincing the court to permit the clearly preempted state law claim would need to be excised from the award under an ERISA elements evaluation. Thus, there can be no doubt that the district court improperly ignored ERISA precedent in considering and entering its fee judgment.
*364 Hollander may now attempt to argue, in spite of his several pleadings to the contrary, that the “extended earnings” specified in the 1993 Agreement, did not actually constitute ERISA pension funds, although he is almost certainly collaterally estopped from attempting to make such an argument at this point.
ERISA defines an employee pension plan as follows:
the terms “employee pension benefit plan” and “pension plan” mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
(i) provides retirement income to employees, or
(ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.
29 U.S.C. § 1002(2)(A). The 1993 Agreement provided both of these benefits to Hollander. J.A. at 1185.
The Supreme Court gives ERISA a broad common-sense meaning. Pilot Life, 481 U.S. at 47, 107 S.Ct. 1549; see also Dakota, Minn. & E. R.R. Corp. v. Schieffer, 648 F.3d 935, 939 (8th Cir.2011). And even a cursory review of the relevant portions of the 1993 Agreement seem likely to support Hollander’s pension plan position as a matter of law. There is, however, some precedent that an individual contract providing benefits to a single executive employee is not an ERISA employee welfare benefit plan. Schieffer, 648 F.3d at 938. But, Hollander was not an executive employee of American, the 1993 Agreement (as Hollander alleges) creates a pension plan under 29 U.S.C. § 1002(2)(A), not an employee welfare benefit plan defined in § 1002(1), and it is likely that this same contract provision was used for a broad class of American’s agents and not just Hollander.
Schieffer explains further, however, why the district court lacked subject matter jurisdiction under the IWPCL in this case. Schieffer, president of DM & E, was terminated without cause, triggering several severance provisions. When he demanded state law arbitration, DM & E contended that any obligation to arbitrate was preempted by ERISA. The court noted that “Schieffer’s arbitration demand included a demand for double damages under South Dakota’s failure-to-pay-wages statute, a remedy that clearly is preempted if the Employment Agreement is an ERISA plan.” Schieffer, 648 F.3d at 937 (emphasis added). While some of Schief-fer’s several severance provisions were found not to be ERISA pension plans and were arbitrable, the Schieffer court also noted that a claim concerning a single employee pension arrangement that constituted an ERISA plan, as we have in this case, was not arbitrable under state law. If an ERISA plan, said the court, “all state law remedies are preempted.” Id. at 939.[13] Thus, the “extended earnings” remedy Hollander correctly alleges to be part of a “qualified employee pension benefit plan” under ERISA, 29 U.S.C. § 1002(2)(A), served to preempt the district court’s subject matter jurisdiction over the IWPCL claim used by the court to award the disputed fees judgments.
The majority cannot reasonably argue, and I believe it does not, that the district *365 court was not aware of the nature of the ERISA claim or that a preemption-producing ERISA claim was not in place. Indeed, the majority states “we do not question American Family’s argument that evidence bearing on both [IWPCL and ERISA] claims [in the district court was] somewhat overlapping.” Ante at 349. The majority discusses the existence of the term “extended earnings” under both the IWPCL and ERISA and the existence and status of Hollander as an employee of American under Darden, 503 U.S. at 323, 112 S.Ct. 1344. Ante at 348-49. While the district court did not ultimately rule on the merits of the ERISA issue, the continuing viability of the claim was ruled upon by the court in the course of the trial. Indeed, the parties, on the record, just prior to close of all the evidence, specifically stated that they had offered all the evidence they considered necessary on the ERISA question and affirmatively submitted the issue to the district court. J.A. at 1108-09, 1125. American then made a Rule 50 motion for judgment as a matter of law seeking, in part, dismissal of Hollander’s ERISA claim. J.A. at 1109. The next day, the district court stated, “on the Rule 50 [ERISA dismissal] motion, I’m denying [that] .... on the 15(b) motion to amend [to assert the IWPCL claim by Hollander], I’m granting that motion.” J.A. at 1124. Thus, the district court, as both the trier of fact and concluder of law on the issue, affirmatively sustained the viability of the completely preempting ERISA claim.
This makes the waiver argument problematic. American did substantively advance ERISA preemption both at trial and on appeal although, concededly, it could have been more articulate in doing so.[14] Additionally, Hollander had an “obligation to show, by a preponderance of the evidence, facts supporting jurisdiction.” Schubert v. Auto Owners Ins. Co., 649 F.3d 817, 822 (8th Cir.2011). And, since subject matter jurisdiction was at issue, the trial court also had an obligation to evaluate it. Id. at 820-21 (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006)). Indeed, according to the majority, the trial court in the face of the ERISA cause of action, affirmatively chose to reject the federal claim and, instead, to rule upon the state IWPCL claim.
The majority opinion states that I (the dissent) “fail[ ] to note ... the salient distinction between complete and ordinary preemption in the relevant line of cases: complete preemption has attached to ERISA claims only in the removal context, where an ERISA claim provides the sole basis of federal subject-matter jurisdiction.” Ante at 353 (emphasis added). This statement reflects an almost complete transmogrification of Supreme Court and Eighth Circuit precedent.
*366 The majority’s premise is supported by neither logic nor Supreme Court jurisprudence. The majority does not explicate how or why the “extraordinary preemptive power” of ERISA that is embedded with clearly enunciated congressional policy as interpreted by intelligible Supreme Court language should blink on and off like a traffic light depending upon how a preempting ERISA cause of action happens to arrive for adjudication in a fully authorized judicial forum. Perhaps this is because, given Supreme Court and circuit precedent, there is no logical or lawful explanation.
By congressional mandate there are four ways to assert an ERISA claim in two separate judicial forums, state and federal. Under 29 U.S.C. § 1132(e) “[sjtate courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of [ERISA-benefits] actions under [§ 1332(a)(1)(B)].” (Emphasis added). A state forum’s jurisdiction is, of course, tentative because 28 U.S.C. § 1441(a) permits removal of an ERISA benefits claim from a state tribunal to a federal district court. E.g., Davila, 542 U.S. at 207, 124 S.Ct. 2488. An ERISA-benefits action may also be asserted directly in the federal district court under either federal question jurisdiction, 28 U.S.C. § 1331, e.g., Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 931 (8th Cir.1999), or, in a proper case, diversity jurisdiction under, 28 U.S.C. § 1332,[15] e.g., Pilot Life, 481 U.S. at 43, 107 S.Ct. 1549. However, in each of the four forum possibilities, the same “extraordinary pre-emptive power” is at work to convert an ordinary state law claim into one stating, exclusively, an ERISA benefits cause of action. Metro. Life, 481 U.S. at 65, 107 S.Ct. 1542.
If an ERISA benefits cause of action is filed and litigated to a conclusion in a state court of competent jurisdiction, ERISA totally preempts all state laws that conflict with its provisions or frustrate its objectives. As recently explained in Nitro-Lift Technologies, L.L.C. v. Howard, — U.S. -, 133 S.Ct. 500, 184 L.Ed.2d 328 (2012) (per curiam), a case in which a unanimous Supreme Court held that the State of Oklahoma must not burden the Federal Arbitration Act with “adequate and independent” state policy grounds, the Court explained that federal statutes (such as ERISA) as interpreted by the Supreme Court, are the supreme law of the land and must be followed. Id. at 502-04. Nitro-Lift noted that it is the Supreme Court’s responsibility to say what a federal statute means and once the Court has spoken, it is the duty of other courts, federal and state, to respect that understanding of the governing rule of law. Id. at 503. Here, federal ERISA law and its preemptive force has been established by the Supreme Court. So, even if a specific state statute, such as the IWPCL, conflicts with a general federal statute such as ERISA, the federal statute controls. Thus, ERISA preemption would control in state court. Likewise, an ERISA cause of action filed *367 in the first instance in federal district court or removed to federal court from a state court, would control as a matter of preemption. The majority’s conclusions to the contrary are simply wrong.
In this action, the federal district court had jurisdiction to determine its subject matter jurisdiction over the IWPCL cause of action, Kircher v. Putnam Funds Trust, 547 U.S. 633, 644, 126 S.Ct. 2145, 165 L.Ed.2d 92 (2006); Atkinson v. Morgan Asset Mgmt., Inc., 658 F.3d 549, 552 (6th Cir.2011), and an obligation to dismiss the action if it had none. Schubert, 649 F.3d at 822. It had none. Thus, in the face of the ERISA cause of action, the late-blooming IWPCL claim should have been deemed “dead on arrival” -when it appeared at the federal courthouse door.
III. CONCLUSION
Accordingly, the district court had no subject matter jurisdiction over the IWPCL cause of action and erred in its award of attorney fees on July 8, 2011, and August 3, 2011. The majority reaches a result but it does not follow the law. I dissent.

. The amount was established through calculations made by Hollander's listed expert witness Stephen E. Koons, CPA/ABV, and was thereafter agreed upon by the parties. In any event, no part of this award was for attorney fees.

. While Hollander ultimately sought judgment under three theories—breach of contract, Chapter 91A (Iowa Wage ‘ Payment Collection Law (IWPCL)), and ERISA—he conceded in his trial brief to the court that the amount due him was for "extended earnings” under the 1993 Agreement and was the correct amount due under each of his theories. While the only cause of action in this case for which the trial court had subject matter jurisdiction was his ERISA claim, he voluntarily dismissed that remedy prior to this appeal. Thus, I conclude that the privately negotiated stipulated amount was a separately enforceable settlement *357 agreement. Accordingly, I leave the parties where they find themselves on that award.

. The First Circuit appears to have abandoned Wolf's approach as evidenced by Negron-Fuentes v. UPS Supply Chain Solutions, 532 F.3d 1 (1st Cir.2008). In Negron-Fuentes, that Circuit soundly and completely rejected a plaintiff’s effort, through "artful pleading” to escape ERISA preemptive force by "disguis[ing]” a federal ERISA claim as a state law cause of action. Id. at 6.

. See also Treasurer, Trs. of Drury Indus., Inc. Health Care Plan and Trust v. Goding, 692 F.3d 888, 897 (8th Cir.2012) (holding that state law conversion claim was preempted by ERISA).

. The majority states, "[b]ecause American Family failed to raise ERISA preemption before the district court, we may not consider the issue sua sponte on appeal,” ante at 354 (footnote omitted) (citing Roberts v. Apfel, 222 F.3d 466, 470 (8th Cir.2000)), and later, that American "waived the argument on appeal,” noting that an argument is abandoned and unreviewable if not raised on appeal, ante at 354 n. 9 (citing Lockley v. Deere & Co., 933 F.2d 1378, 1386-87 (8th Cir.1991)). It is hard to imagine two cases less supportive of the proposition for which they are advanced—i.e., waiver of subject matter jurisdiction. Apfel is a Social Security appeal in which the Administrative Law Judge's failure to attach to its opinion a psychiatric review technique form was first raised by the claimant on appeal. 22 F.3d at 470. In Lockley, the unreviewable abandoned argument was failure to include in the record on appeal testimony supporting cautionary instructions submitted by Deere and not given by the trial court. 933 F.2d at 1386-87. Subject matter jurisdiction was not an issue in either case.

. Citizenship of parties in different states provides a federal forum for a claim based exclusively on state law if the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. An amount in controversy that exceeds this amount provides the court subject matter jurisdiction, that is, authority to hear the case. Radil v. Sanborn Western Camps, Inc., 384 F.3d 1220, 1225 (10th Cir.2004) ("To establish subject matter jurisdiction under 28 U.S.C. § 1332, a party must show that ... the amount in controversy exceeds $75,000.”); Denny v. Orient Lines, 375 F.Supp.2d 1320, 1322 (D.N.M.2005). Congress may specifically limit or deny state law subject matter jurisdiction, as in § 1332, or deny such jurisdiction by determining that a particular federal cause of action completely preempts a designated federal field of endeavor as in ERISA.